Colleen REDMAN, Appellant,

v.

DEPARTMENT OF EDUCATION, State of Alaska, Appellee.

DEPARTMENT OF EDUCATION, State of Alaska, Cross-Appellant,

v.

Colleen REDMAN, Cross-Appellee.

Nos. 1802, 1822.

Supreme Court of Alaska.

March 8, 1974.

Joseph W. Sheehan, of Rice, Hoppner, Blair & Associates, Fairbanks, for appellant/cross-appellee.

John E. Havelock, Atty. Gen., Juneau, William T. Christian, Jr., Asst. Atty. Gen., Fairbanks, for appellee/cross-appellant.

Before RABINOWITZ, C. J., ERWIN and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

Colleen Redman appeals from the superior court's judgment on damages due her

from the State Department of Education. From July of 1967 through June of 1970 Redman was employed by Education as a home-school coordinator in the Boarding Home Program at Fairbanks. In June of 1970 Redman received notice that she would not be re-hired for the following school year. She brought an action for declaratory judgment and injunctive relief, including compensatory damages. In State v. Redman [1] we affirmed the superior court's decision that Redman was a tenured teacher under state law, and had been improperly dismissed by Education. In a subsequent trial on damages the superior court, sitting without a jury, awarded Redman approximately $17,000.00. This appeal and cross-appeal followed.

Under the superior court's judgment, appellant was awarded damages based upon her lost salary for school years 1970–71 and 1971–72. Deductions were made for her failure to mitigate damages and for wages she earned from alternate employment. The superior court found that appellant's claims of defamation and loss of professional opportunity were unsupported by evidence, and further refused to hear evidence on her claims of job harassment and discrimination or improper reinstatement. In this appeal Redman challenges the validity of the superior court's salary computations, the deductions from her award, and the rulings on her other claims. Education has filed a cross-appeal alleging errors in the findings on the issues of mitigation and award of attorneys' fees.

### Basis of Award

The superior court based Redman's damages upon lost salary for school years 1970–71 and 1971–72. The amount of lost salary was established by reference to the terms and conditions of her 1969–70 contract, with two exceptions. First, the base salary was adjusted upward to reflect increases which appellant would have received had she been employed by Education during 1970–71 and 1971–72. Secondly, the court determined that she would have been em-

1. 491 P.2d 157 (Alaska 1971).

ployed for no more than 210 days, or ten months, during each of the years in question, and would have been paid at a monthly rate. Appellant accepts the first modification without complaint, but attacks the second as error.

It is undisputed that appellant's 1969–70 contract provided for 238 days of employment with salary computed at a daily rate. The trial testimony of James Harper, who negotiated appellant's prior contracts on behalf of Education, established the following facts. Contract negotiations were premised upon a standard 188-day school year, with variations in the number of working days dependent upon the requirements of the Boarding Home Program. During the 1967–68 school year, when the program was just beginning, appellant's contract called for 158 working days. Her 1968–69 contract was for 224 days, and the 1969–70 contract reflected an increase to 238 days. These latter two contracts exceeded the length of the normal school year due to expansion of the Boarding Home Program, with a resultant increase in Redman's workload. Individual workloads decreased in subsequent years as additions were made to the program's staff. Contract lengths of staff members were reduced accordingly. Harper testified that no one in the Boarding Home Program was employed in excess of 210 days, or ten months, during the 1970–71 or 1971–72 school years. He further testified that, beginning with the 1970–71 school year, contracts for all employees in the Boarding Home Program were based upon a monthly rate of pay, rather than upon a daily rate.

Appellant presented no evidence in the trial court to contradict Harper's testimony, nor does she seek to do so now. Her sole contention is that the superior court ignored the requirements of AS 14.20.145 by refusing to adhere to the strict terms of her 1969–70 contract in computing her lost wages for 1970–71 and 1971–72. AS 14.20.145 provides:

*Automatic re-employment.* If notification of nonretention is not given according to § 140 of this chapter a teacher is entitled to be re-employed in the same district for the following school year on the contract terms the teacher and the employer may agree upon, *or if no terms are agreed upon, the provisions of the previous contract are continued for the following school year, subject to § 158 of this chapter.* The right to be re-employed according to this section expires if the teacher does not accept re-employment within 30 days after the date on which the teacher receives his contract of re-employment. (emphasis added)

Appellant advances alternative arguments concerning the effect of this section upon her recoverable damages. First, she reads AS 14.20.145 as automatically continuing her 1969–70 contract for the 1970–71 and 1971–72 school years, absent proper termination by Education or her resignation. Consequently, she argues, her damages must be predicated upon breach of an existing contract, the terms of which are identical to those in her 1969–70 contract, including contract length and manner of salary computation.

We disagree with appellant's theory. In Swick v. Seward School Board [2] it was held that substantially identical statutory language did not automatically continue a teacher's contract of employment for the following school year just because the employer did not notify the teacher of his nonretention by the required date.[3] In that case a teacher failed to sign and return a written contract for the forthcoming year in a timely fashion. The local school board took this failure as a rejection of the contract offer and refused to re-employ the teacher even when he subsequently tendered the signed contract. Swick contended that his prior contract was continued by operation of law when the statutory date passed without notice of nonretention from the school board;

---

2. 379 P.2d 97 (Alaska 1963).

3. *Id.* at 100.

hence his failure to sign and return a new written contract had no effect on his status. The relevant statutory provision stated in part:

> School boards . . . may hire . . . teachers . . . and issue contracts to same for [the] ensuing school year anytime after January 1, and shall notify . . . teachers of non-retention in writing postmarked or delivered on or before March 15 . . . . In the event that written notification of non-retention . . . is not issued before March 15, the . . . teachers' contracts shall be continued for the ensuing school year in conformity to the Territorial and local salary stipulations including any annual increments.[4]

The court rejected Swick's argument that his prior contract was automatically continued without a signed agreement to that effect.[5] It was stated:

> . . . [T]he 1958–1959 teaching contract between Swick and the board could not "continue" unless Swick consented to its continuance. Swick had a right to insist on the continuance of the existing contract and the board had the obligation to offer him such a contract for the 1959–60 school year. This it did on March 26, 1959. Without Swick's signature to the contract, no contractual relationship could "continue" within the meaning of the statute. The board was absolved of any obligation to Swick

when it tendered him a contract identical in terms with his previous year's contract plus an earned salary increase and Swick failed to accept it by signature and return within a reasonable time.[6] (footnote omitted)

■■ Analysis of *Swick* leads us to the conclusion that AS 14.20.145 does not automatically continue a teacher's prior contract in the event proper notice of nonretention is not given.[7] The effect of the section is to give an improperly nonretained teacher the enforceable right to a written contract of employment for the next school year containing provisions like those in the teacher's contract, for the preceding year.[8] This is further made evident by the language of the section that "[t]he *right to be re-employed* according to this section expires if the teacher does not accept re-employment within 30 days after the date on which the *teacher receives his contract of employment*." (emphasis added) It follows that where, as in the present case, the employer has refused to tender the teacher a new contract, the teacher may enforce her statutory right to be given a new contract and may then sue for breach of that contract. She cannot base an action for damages upon a prior contract that has expired.[9]

Alternatively, appellant asserts that even if her prior contract did not continue, section 145 entitled her to subsequent contracts with the same provisions as those of her

---

4. Ch. 71, § 1 SLA 1957. This section, formerly ch. 74 SLA 1949, was repealed, reenacted, and supplemented by ch. 92 SLA 1960, and amended by ch. 98, § 16 SLA 1966.

5. 379 P.2d at 100.

6. *Id.* at 101. *See also* Spicer v. Anchorage Indep. School Dist., 410 P.2d 995 (Alaska 1966). In *Spicer* we held that a non-tenured teacher could not maintain an action for breach without a properly executed written contract containing the minimum standard provisions required by the Alaska Administrative Code. In so holding we pointed out:
 > [W]here the employment of teachers is concerned, it is necessary that there be a written contract containing certain provisions and that the contract be signed by the teacher and at least two members of

the school board. If these requirements are not met, no contract exists because the school district has no authority to employ teachers except as prescribed by statute and regulation. *Id.* at 997 (footnote omitted).

The Alaska Administrative Code, 4 AAC 18.010, requires written teachers' contracts containing specified conditions.

7. The statutory language construed in *Swick* has remained substantially unchanged by the legislature since 1949. See note 4, *supra.* It is currently codified in AS 14.20.145.

8. 379 P.2d at 99.

9. *See* Lost Creek School Tp., Vigo County v. York, 215 Ind. 636, 21 N.E.2d 58, 61 (1939).

1969–70 contract. Therefore, her damages must be based on the strict terms of that contract, including number of working days and manner of salary computation. The only modifications she would recognize are those specifically allowed by AS 14.20.158. AS 14.20.158 provides:

> *Continued contract provisions.* Continuation of the provisions of a teacher's contract according to §§ 145 or 155 of this chapter does not
>
> (1) affect the alteration of the teacher's salary in accordance with the salary schedule prescribed by state law, or in accordance with a local salary schedule applicable to all teachers in the district and adopted by bylaws;
>
> (2) limit the right of the employer to assign the teacher to any teaching, administrative, or counseling position for whicho the teacher is qualified; or
>
> (3) limit the right of the employer to assign the teacher, as is reasonably necessary, to any school in the district.

■■ We do not read these sections in the restrictive fashion suggested by appellant, since to do so would lead to unreasonable results.[10] As we have stated before, the purpose of tenure laws is "to give job security to experienced teachers and to ensure that they will not be discharged for inadequate reasons."[11] Section 145 seeks to achieve this result by treating an improperly nonretained teacher as if he had been retained, with no prejudice to result from the fact of nonretention. The language requiring that the provisions of the previous contract are to be continued for the following school year is intended to protect the teacher's legitimate expectation of continued employment on terms no less favorable than those previously enjoyed. It is not meant to require each term of the previous contract to be continued unchanged where the result would be to unreasonably penalize either the teacher or the employer. Section 158, to which section 145 is explicitly made subject, supports our view of the legislature's intent. That section puts the re-employed teacher in the same salary position he would have been in had his employment not been interrupted, regardless of his salary under his last contract.[12] It further allows flexibility in the manner of re-employment where adherence to the strict terms of the prior contract would put an unreasonable burden on the employer.

■ Appellant would have us hold that section 158 represents an exclusive list of the ways in which an improperly nonretained teacher's prior contract provisions may be varied. Under this view appellant is entitled to salary for more days than she could reasonably have expected to work had she actually been employed during the years in question, and her salary must be computed in a manner different from the way it would have been had she continued to work in the Boarding Home Program during these years. In a converse situation, the interpretation urged by appellant would allow an employer to limit a re-employed teacher to the number of working days and manner of salary computation set out in a prior contract where, but for the improper nonretention, the teacher could reasonably have expected to benefit from more favorable conditions afforded other teachers in the same program who were retained. We feel such a limited interpretation would defeat the general intent of the legislature that an improperly nonretained teacher be returned to substantially the same position as before nonretention. Consequently we hold that, in assessing damages due to improper nonretention, the strict

---

10. Sherman v. Holiday Const. Co., 435 P.2d 16, 19 (Alaska 1967); *see* Absher v. State, Dept. of Highways, 500 P.2d 1004, 1005–1006 (Alaska 1972).

11. State v. Redman, 491 P.2d 157, 159 (Alaska 1971).

12. The size of appellant's award was substantially enlarged by a general salary increase afforded Alaska's teachers in 1970. She agrees that she is entitled to the benefit of this increase by AS 14.20.158(1).

terms of a teacher's prior contract may be varied in ways not specifically enumerated in AS 14.20.158 where such modifications are necessary to protect the reasonable expections of the parties.[13] Thus, the superior court committed no error in determining that appellant's damages should be based upon a ten-month term with payment at a monthly rate.

■ In her statement of points on appeal Redman also attacked the legitimacy of the salary step-level used by the superior court in computing her damages. This point was not argued on appeal and we therefore decline to consider it.[14]

### Failure to Mitigate Damages

The superior court determined that Redman failed to make reasonable efforts to mitigate her damages during the years in question. Specifically, the court found that Education had presented sufficient evidence that suitable alternate employment was available to Redman as a social worker with the Fairbanks North Star Borough School District from March through at least June of 1971, and that she failed to mitigate by refusing to apply for this job. Consequently, the court reduced her award by the amount she would have earned had she accepted employment with the borough.

The borough job was brought to appellant's attention in February of 1971 by a letter from Education's attorney to her attorney. At that time the issue of liability had not been finally determined since the superior court's decision that Redman had a right to re-employment was on appeal to this court. Education's letter contained an offer of employment with the Fairbanks North Star Borough School District as a school social worker beginning

March 1, 1971. Attached to the letter was a job description outlining the details of employment. The letter also suggested that the parties attempt to reach a "compromise settlement" on the amount of back salary Education would owe Redman should Education's liability be finally established.

Appellant's reply letter, written by her attorney, expressed confusion regarding the purpose and effect of Education's "compromise" proposal. The letter stated that the description of the borough job was "so general and vague as to defy consideration," and listed several reasons why Redman felt the job was not a suitable alternative to her prior position with Education. Education did not reply to appellant's letter and there were no further written communications between the parties regarding the job.

Appellant first claims that it was error for the superior court to admit any evidence of the borough job because it represented an offer of compromise by Education, and as such was barred by Alaska Civil Rule 43(i)(2).[15] Alternatively she contends that even if the evidence was admissible, the employment offered was conditioned upon surrender of her rights or was otherwise unsuitable for mitigation purposes.

■ In disposing of the evidentiary question we deem it unnecessary to decide if the offer of the borough job was an offer of compromise due to our conclusion that Civil Rule 43(i)(2) does not preclude admission of this evidence in any event. Civil Rule 43(i)(2) excludes evidence of a compromise offer where it is introduced to show the offering party has admitted the existence or nonexistence of liability,

13. Our decision on this point accords with the result reached by other courts under different statutory provisions. *See, e. g.,* Wells v. Bd. of Educ. of Community Consol. School Dist. No. 64, 121 Ill.App.2d 112, 257 N.E.2d 252, 256 (1970).

14. Alaska App.R. 11(b)(1) [g], *formerly* Alaska Supr.Ct.R. 11(a)(8); Weaver v.

O'Meara Motor Co., 452 P.2d 87, 93 (Alaska 1969); Whaley v. State, 438 P.2d 718, 723–724 (Alaska 1968); Merrill v. Merrill, 388 P.2d 259, 261 (Alaska 1964).

15. Alaska R.Civ.P. 43(i)(2) provides:
 *Compromise Offer.* An offer of compromise is not an admission, and no evidence thereof shall be permitted.

or the value of a disputed claim.[16] The rule is intended to encourage out-of-court settlements by removing the risk that offers and counter-offers made during negotiations will be used by one party to show an admission by the other.[17] This is evident in the language of the rule that "[a]n offer of compromise is not an admission." Clearly Civil Rule 43(i)(2) is inapplicable here. The questioned evidence was not introduced by one party to show an admission by an opponent. Education introduced evidence of its own offer solely to meet its burden of proving that alternate employment was available to Redman for purposes of mitigation. When introduced under these circumstances, evidence of an offer of compromise is certainly admissible absent some other valid grounds for exclusion.[18] Since appellant has suggested none, we find no error in admitting the evidence.

Next we turn to the question of whether Education's evidence of the borough job was sufficient to support the superior court's decision that the job was available to Redman and suitable for mitigation purposes. In addition to the letters mentioned before, Education introduced testimony by state and borough school officials to the effect that the borough job had been specifically tailored to suit Redman's qualifications and experience, that federal funds were available to pay her salary, that the borough was willing to hire Redman if she applied. Education's former attorney testified that he did not intend the job offer to be conditional and that he had discussed her letter with Education officials to determine if her complaints about the job's suitability were valid. He then concluded, together with the officials, that appellant did not want the job, and he considered the offer rejected. Consequently, he stated, no further attempt was made to contact appellant or to meet her objections.[19]

---

16. This rule has been operative in Alaska since territorial days. *See* Fjeldahl v. Homer Co-Op. Ass'n, 11 Alaska 112, 136 (D.Alaska 1946).

17. People ex rel. Dep't of Pub. Works v. Forster, 58 Cal.2d 257, 23 Cal.Rptr. 582, 585, 373 P.2d 630, 633 (1962); Aiple v. South Side National Bank, 442 S.W.2d 145, 152 (Mo.1969); C. McCormick, Handbook of the Law of Evidence § 251, at 540 (1954 ed.); Advisory Committee's Note to Proposed Federal Rule of Evidence 408, 46 F.R.D. 161, 238 (1969).

18. Alaska R.Civ.P. 43(b) states in part:
The admissibility of evidence shall be governed by these rules, or in the absence of rule, by the principles of common law as they may be interpreted by the courts of the state in the light of reason and experience. *In the absence of rule*, the evidence shall be presented according to the most convenient method prescribed by common law principles, and *the principle which favors reception of the evidence shall govern*. (emphasis added)
We note that our rules specifically allow evidence of offers of compromise for the purpose of assessing costs. See Alaska R.Civ.P. 68.

19. Education's former attorney testified as follows:

Q Your testimony is then that you obviously favored a settlement, is this correct, in the whole action?
A Yes, that's definitely true.
Q But the point that I'd like to again inquire on is whether or not this job offer was conditioned upon that settlement.
A That wasn't my intention.
Q Now, Mr. Sheehan sent you a letter in response to your letter which is Defendant's Exhibit B, that yellow sheet that you have in your hand.
A Yes.
Q And in that, he makes statements regarding the offer that you made. Did you recall whether you responded to that letter or not?
A I recall that I—I'm quite sure I called Mr. Harper and talked to him about it, because I was quite concerned about—particularly Page 2. Mr. Sheehan in his letter said that if Mrs. Redman takes this job, she will lose any tenure, privileges and rights as provided by law and would be required to serve at the whim of the superintendent with no right of retention. I didn't understand—if that was true or not, of course, other than was mentioned by Mr. Sheehan. So I talked to—I'm quite sure I talked to Mrs. Redman about that. I talked to Mr. Harper about that. And it was still his feeling

Appellant claims that the borough job, as described in Education's letter, was deficient in several respects. She argues that, although the offer was vague and ambiguous, it was reasonable for her to conclude that the tenure, pay, benefits, working conditions and nature of her duties would differ materially from those of her prior job with Education, and that she would risk compromising her right to re-employment by accepting the offer. Since Education did not clarify the offer or meet her specific objections about the job, she contends that her refusal to apply for the borough job was justified.

■ Appellant's argument is persuasive. As we stated in Anchorage Independent School District v. Stephens:[20]

> It is a cardinal rule in the law of damages that a plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them. This rule applies whether the action is in tort or breach of contract and is known as the avoidable consequences rule. (footnote omitted)[21]

Under this rule Redman had the duty to use reasonable efforts to secure employment of a substantially similar nature in mitigation of her damages.[22] Education, on the other hand, was required to prove at trial that such employment was unconditionally available and that Redman failed to use reasonable efforts to secure it.[23]

■ In our view Education's evidence of the offer of a job as a school social worker with the Fairbanks North Star Borough School District does not support the superior court's conclusion that suitable alternative employment, consistent with Redman's qualifications and training, was unconditionally available. It is not clear from the text of Education's February 23, 1971, letter [24] that the offer was unconditional and was not contingent upon settlement by Redman of her pending litigation with Education. Redman was under no duty to accept this position with the borough if her acceptance would result in compromising her claims to reinstatement in her former position with Education and damages for wrongful dismissal.[25] Since Education did not respond to appellant's reply letter there was no evidence upon which the superior court could find the offer was unconditional.[26]

The superior court also reduced Redman's award for failure to mitigate dam-

that—as I remember it, that she could not get the kind of job she had before, this job was open to her, and I also believe that there were some problems along the line suggested in paragraph 3 of the second page.

Q Well, my question was whether you had ever responded to Mr. Sheehan's letter?

A I recall that I did not respond—during the time I had the case and how much longer after 12 March I had the case, I don't remember. But I did not respond in writing to this letter. I—my memory just isn't good enough to say whether or not I called Mr. Sheehan after getting this letter. I may have and I may not have. I just don't recall.

20. 370 P.2d 531 (Alaska 1962).

21. *Id.* at 533.

22. 11 Williston on Contracts § 1359 (3d ed. 1968); 5 Corbin on Contracts § 1095 (1964 ed.); Restatement of Contracts § 336 (1932).

23. 11 Williston on Contracts § 1360 (3d ed. 1968).

24. Redman's counsel informed Education that he found the letter confusing and imprecise. Analysis of the text of the letter in question discloses ample justification for counsel's confusion. Both letters are attached as appendices to this opinion.

25. Billetter v. Posell, 94 Cal.App.2d 858, 211 P.2d 621, 623 (1949); 5 Corbin on Contracts § 1043, at 274 (1964 ed.); McCormick on Damages § 159, at 628 (1935); 11 Williston on Contracts § 1359, at 309–10 (3d ed. 1968); *see* Dahl v. The S.S. Amigo, 202 F.Supp. 890, 893 (S.D.Ala.1962); Smith v. Belvoit Corp., 40 Wis.2d 550, 162 N.W.2d 585, 589 (Wis. 1968).

26. We thus find the superior court's finding of fact to be clearly erroneous. Alaska R. Civ.P. 52(a); State v. Abbott, 498 P.2d 712, 727 (Alaska 1972); Myers v. Sill, 497 P.2d 920, 923 (Alaska 1972); Alaska Foods, Inc. v. American Mfr's Mut. Ins. Co., 482 P.2d 842, 843–850 (Alaska 1971).

ages between January 5 and January 26, 1972. After this court mandated Redman's reinstatement, Education offered her re-employment under a contract tendered December 29, 1971. Redman's first working day under the contract was to be January 5, 1972. She refused to agree to the new contract because, as she later testified at trial, she felt it did not offer the salary step-level or manner of salary computation to which she was entitled. Apparently there were negotiations between the parties, and it was finally agreed that Redman would return to work without a contract on January 26, and that the contested contract terms would be subsequently determined at the trial on damages.

█ From all that appears in the record Education presented no evidence below to sustain its burden of proving that Redman could have returned to work on January 5 without partially forfeiting her claims on the contested salary issues. Education, although obligated to re-employ Redman, clearly retained the right to insist upon a contract of employment.[27] There was no evidence in the record that Education had waived this right.

█ Redman, however, was not obligated to return to work on January 5 if her re-employment was conditioned upon acceptance of the new contract. Acceptance would necessarily prevent her from later claiming that different salary terms should apply to her employment under the new contract. The salary terms were disputed throughout her litigation against Education and the dispute continued into the trial on damages. The law of mitigation did not require Redman to accept re-employment if

it could result in premature surrender of her salary claims.[28] If, on the other hand, Education would have allowed Redman to return to work on January 5 without a contract, then her unjustified refusal to do so was equivalent to a failure to mitigate her damages.[29]

█ As we view the evidence properly before the trial court, it did not show that Redman's failure to return to work on January 5 was unjustified. It was established that Education offered to re-employ Redman beginning January 5 under a new contract, that Redman contested the terms of the contract and refused to accept it, and that she finally began work on January 26 without a contract. There was no evidence that Redman would have been allowed to return to work without a contract on January 5. Since Education had the burden to prove that Redman could have accepted re-employment without sacrificing any of her claims, the doubt must be resolved in her favor.[30] We hold that under these circumstances appellant was entitled to recover damages for the fifteen working days between January 5 and January 26.

## Mitigation Deduction

The superior court deducted $4,400.00 from appellant's award as salary she earned in mitigation while working for the State Department of Highways. Redman admitted in her trial testimony that she had performed services for the department between May 15 and October 1, 1971, and had received $4,400.00 for her work. The court deducted the full amount because it found that "state law" would have prevented Red-

27. Swick v. Seward School Bd., 379 P.2d 97, 99 (Alaska 1963).

28. 11 Williston on Contracts § 1359, at 309–10 (3d ed. 1968); Farmers' Co-op Ass'n. v. Shaw, 171 Okl. 358, 42 P.2d 887, 889 (1935). See also Stanspec Corp. v. Jelco, Inc., 464 F.2d 1184, 1187 (10th Cir. 1972); Cain v. Grosshans & Petersen, Inc., 196 Kan. 497, 413 P.2d 98, 102–03 (1966); Billetter v. Posell, 94 Cal.App.2d 858, 211 P.2d 621, 623–624 (1949).

29. 11 Williston on Contracts § 1359, at 309 (3d ed. 1968); Billetter v. Posell, 94 Cal.App.

2d 858, 211 P.2d 621, 623 (1949); Flickema v. Henry Kracker Co., 252 Mich. 406, 233 N.W. 362, 363–364 (1930).

30. 11 Williston on Contracts § 1360 (3d ed. 1968); 5 Corbin on Contracts § 1095, at 518–19 (1964 ed.); United States ex rel. Tom Growney Equip., Inc. v. Fisher, 457 F.2d 1298, 1300–01 (10th Cir. 1972); Hegler v. Bd. of Ed., 447 F.2d 1078, 1081 (8th Cir. 1971); State ex rel. Freeman v. Sierra County Bd. of Ed., 49 N.M. 54, 157 P.2d 234, 236 (1945).

man from working for the Department of Highways had she also been employed during the same period with the Department of Education.

Apparently the superior court relied upon section 4.12 of the By-Laws for State-Operated Schools adopted by the State Department of Education. Section 4.12 provides:

> A teacher, supervisor, or administrator may not hold any other office or employment for which he receives remuneration from the State of Alaska during his period of employment by the State-Operated Schools.

Appellant disputes the court's finding and the consequent deduction from her award because the by-laws were not properly in evidence.

 We conclude that appellant is correct in contending that the entire $4,400.00 should not have been deducted. Where an employee's wrongful discharge frees him to take another job he could not have held had he been retained, the employee can recover as damages only the difference between his actual earnings and the amount he would have earned in his old job. This result is normally achieved by reducing the employee's award by the amount earned from substituted employment that would have been incompatible with his former employment.[31] Here, appellant's "period of employment" with Education under the contract to which she was entitled would have been no more than ten

months. Thus she would have been free to work for the Department of Highways for at least two months during the May-October period without coming in conflict with the prohibition of section 4.12. Consequently we hold that appellant's award must be increased by an amount representing two months' salary from the Department of Highways job.[32]

### Defamation Claim

Appellant claims the superior court erred in denying her recovery of damages for defamation. She contends that the letter of nonretention sent her by Education, to which were appended complaints against her by Fairbanks residents associated with the Boarding Home Program, was defamatory per se of her character and professional reputation. She further alleges that Education published these defamatory documents by placing copies of them in her state personnel file. Education asserted at the trial that AS 09.50.250 bars defamation claims against the state.[33]

 Appellant has failed to argue on appeal why this statute should not apply to her defamation claim. We hold her claim of error has been abandoned and decline to consider it.[34]

### Lost Opportunity for Advancement

Appellant claims the superior court erred in refusing to award her damages for loss of opportunity to be appointed to the position of Head Home-School Coordinator in the Boarding Home Program. This super-

---

31. 11 Williston on Contracts § 1359, at 310 (3d ed. 1968) ; 5 Corbin on Contracts § 1095, at 517 (1964 ed.) ; Restatement of Contracts § 336, at 537 (1932) ; Chase v. Fall Mountain School Dist., 330 F.Supp. 388, 400 (D.N.H.1971) ; People ex rel. Bourne v. Johnson, 32 Ill.2d 324 205 N.E.2d 470, 473 (1965).

32. The superior court made no findings regarding the exact beginning and ending dates, of appellant's ten month contract period. We assume such findings will be made on remand to allow determination of the amount of appellant's increase.

33. AS 09.50.250 states in part:
 *Actionable claims against the state.* A person or corporation having a contract,

quasi-contract, or tort claim against the state may bring an action against the state in the superior court. . . . However, no action may be brought under this section if the claim

. . . . .

(3) arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

34. Alaska App.R. 11(b)(1) [g], *formerly* Alaska Supr.Ct.R. 11(a)(8) ; Fairview Development, Inc. v. City of Fairbanks, 475 P.2d 35, 36 (Alaska 1970), appeal dismissed, cert. denied, 402 U.S. 901, 91 S.Ct. 1374, 28 L.Ed. 2d 642 (1971).

visory position was created and filled by Education shortly before Redman was rehired. Appellant contends that she would have been entitled to the appointment had she been retained since she would have been the person most qualified for the job by education and experience. She argues that this lost opportunity is a compensable element of her damages for improper nonretention.

■ During the trial Education attempted to introduce evidence that Redman would not have been appointed to the new position even if she had been retained. Appellant's counsel objected to the evidence on relevancy grounds, asserting that Redman did not contend that she would necessarily have been appointed to the new job. The court accepted this contention and excluded Education's evidence. Having once abandoned her claim, appellant cannot reassert it on appeal.

### Redman's Other Claims

■ The superior court refused to hear evidence on appellant's claims that she was entitled to damages for alleged harassment and discrimination or improper reinstatement by Education. These claims relate to matters occurring after appellant's re-employment and are not connected with her original nonretention. Nor did appellant raise these claims in her original or amended complaints. We agree with the superior court that these claims cannot properly be considered in the present case.

### Cross-Appeal

■ Education contends the superior court erred in failing to find that the job offered Redman with the Fairbanks North Star Borough School District was available for mitigation purposes during the 1971–72 school year. The original job offer sent to Redman covered employment only during the latter part of the 1970–71 school year. Testimony by Education's own witnesses established that continuation of the

position was dependent upon subsequent receipt of federal funds to pay salary. There was no showing that such funds were allocated for the borough job or that the job existed during the 1971–72 period. Upon this state of the record we cannot say the superior court's finding was error.[35]

■ Education's final claim is that the trial court abused its discretion in awarding Redman attorneys' fees, since she was not the prevailing party in the trial on damages.[36] Education's claim on this point is without merit. Appellant was clearly the prevailing party in this trial.[37]

The superior court's judgment is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.

### APPENDIX A

February 23, 1971

Joseph Sheehan, Esq.
330 Wendell Suite A
Fairbanks, Alaska 99701

Dear Sir:

This is to advise you that I filed a statement of points in the above entitled case on February 3, 1971. Assuming the present status of the case continues, it can be expected that the Supreme Court will not rule on the case for several months or longer.

I wish to now formally suggest a compromise settlement which is not intended to effect in any way the issue of liability only, which issue is pending on appeal in the present suit. Settlement of this suit would be very well received by me because of a rather large volume of other legal matters which have been assigned to me and which will occupy my full time.

With respect to this suggested compromise, I offer the following:

A. Immediate employment in the capacity of school social worker—"four step" serving in the Fairbanks Community. A job description is at-

35. Myers v. Sill, 497 P.2d 920, 923 (Alaska 1972).

36. Alaska R.Civ.P. 82(a).

37. DeWitt v. Liberty Leasing Co. of Alaska, Inc., 499 P.2d 599, 601 (Alaska 1972); Nordin Const. Co. v. City of Nome, 489 P.2d 455, 474 (Alaska 1971).

tached hereto. Plaintiff should understand that this position is now open and available to plaintiff and we await her reply to this opportunity. The pay is more than that which she received before last leaving state employment. This offer of employment is not dependent upon our reaching an agreement as to the exact amount of money to be paid under the provision of the following sub-paragraph. That matter can be dealt with later.

B. An appropriate payment of money to compensate for salaries not received this far by the plaintiff because of her notice of non-retention.

C. Concerning this job prospect, her pay could be $75.23 per day. With respect to this school year, she would receive about $6,000 in earnings. This position is open as of March 1, 1971 so please contact me as soon as possible.

As I mentioned before, I have no shortage of work to do and resolution of this case would be of personal benefit to me. I believe this case can be settled as I trust all parties can make reasonable and practical suggestions.

Yours truly,

STEPHEN COOPER
DISTRICT ATTORNEY

By: _____

Lyle R. Carlson
Assistant District Attorney

LRC:sh
attachments

March 12, 1971

APPENDIX B

Lyle Carlson
District Attorney's Office
604 Barnette
Fairbanks, Alaska 99701
Re: Redman v. Department of Education
Dear Lyle:

Having returned to the State of Alaska on February 25, I have previously not had an opportunity to fully discuss the matter of your proposal dated February 23, 1971 with Mrs. Redman, until the present.

I am somewhat confused as to just what the prupose of your offer is? In the first sentence of paragraph two you state that it is a "compromise settlement", then you go on to clarify that the offer is "not intended to affect in any way the issue of liability." In the very next sentence it speaks of "settlement of this suit". Just what is it that were are compromising and settling by your proposal?

In addition to this confusion, there are several observations I should like to make concerning your proposal and the job description itself:

A. If Mrs. Redman had been properly retained for the 1970–1971 school year, she would have been compensated on the basis of a "Six Step", Masters plus 18 and including the teacher pay raise received across the board for the 1970–1971 school year. As such I disagree with the supposition that the position offered by your office would provide more pay than that which Mrs. Redman would have been entitled to if the Department had not illegally and wrongfully prevented from re-employment for the 1970–1971 school year.

B. Any payment of monies for lost salaries would have to be based upon Mrs. Redman's income as she would have received, had the Department not failed to re-employ her, taking into consideration her advancement in "Step" qualifications, and general pay raise for all teachers.

With respect to the job description, the following are obvious inconsistencies with the past experience, qualifications and previous positions which Mrs. Redman held:

1. The job offered is not one which requires a teacher certificate, thus I must assume that it does not carry the benefits and/or security provided by law to certified tenured teachers.

2. The job provided is not with the Department of Education as Mrs. Redman's previous job was, but with the Fairbanks North Star Borough School District.

3. Mrs. Redman would lose all tenured privileges and rights as provided by law and would be required to serve at the whim of the Superintendent with no right of retention, and in fact no assurance that the position offered would be available beyond the 1970–1971 school year.

In summation, the job description is so general and vague as to defy consideration principally for the reasons I have set forth above.

Mrs. Redman is ready and willing to return to employment for the Department of Education at such time as either her previous position is made available to her and/or a similar position consisting of similar requirements, pay, and duties as Mrs. Redman's previous position did. As such, the proposal which you offer Mrs. Redman must be rejected based upon the reasons hereinbefore cited.

Sincerely,