[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 368 
This cause of action is before this court pursuant to remand by the Supreme Court of Ohio. 71 Ohio St.3d 171, 642 N.E.2d 1085. The Supreme Court has determined that relators, Cuyahoga Falls Education Association and Stanley Sipka, are entitled to the extraordinary remedy of a writ of mandamus against respondent, Cuyahoga Falls City School District Board of Education, based on respondent's wrongful termination of relator Sipka. This court must now determine the remaining issue, namely, the extent of damages due to the relators.
 I
Stanley Sipka taught industrial arts and vocational education in the Cuyahoga Falls City Schools from 1964 until the end of the 1988 school year. From 1976 respondent employed Sipka under a continuing contract that required respondent to give Sipka a minimum amount of notice before respondent could terminate Sipka's employment. In April 1988, respondent notified Sipka that his employment would be terminated as of July 1, 1988, because the school system had to undergo a reduction in force. In other words, the school system had to lay off teachers due to declining student enrollment. The respondent also laid off twenty-two other teachers who possessed limited contracts.
Relator education association originally sought to enforce the collective bargaining rights on behalf of the limited-contract employees by seeking a writ of mandamus in the Summit County Court of Common Pleas. The trial court issued the writ. It appears from the record that some procedural difficulties arose as to whether the trial court's grant of the writ applied to Sipka. Eventually, the trial court issued anunc pro tunc order stating that its judgment applied to Sipka. This court reversed the trial court's judgment. Cuyahoga FallsEdn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn. (May 2, 1990), Summit App. No. 14324, unreported, 1990 WL 55867. This court's decision applied to the twenty-two *Page 369 
limited-contract teachers. The Supreme Court of Ohio affirmed.Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist.Bd. of Edn. (1991), 61 Ohio St.3d 193, 574 N.E.2d 442. Relator education association attempted to get the Supreme Court to clarify its decision as to the decision's application to Sipka. The Supreme Court refused.
The relators then sued respondent in this court seeking a writ of mandamus to enforce Sipka's contractual rights and to obtain contractual damages. This court denied the writ based upon res judicata. Cuyahoga Falls Edn. Assn. v. Cuyahoga FallsCity School Dist. Bd. of Edn. (June 16, 1993), Summit App. No. 15833, unreported, 1993 WL 208342. The Supreme Court of Ohio reversed this court's decision. Cuyahoga Falls Edn. Assn. v.Cuyahoga Falls City School Dist. Bd. of Edn. (1994), 71 Ohio St.3d 171, 642 N.E.2d 1085. The Supreme Court found that resjudicata did not apply and that respondent had wrongfully terminated Sipka. The Supreme Court then remanded the case to this court to issue the writ and to determine the corresponding damages.
The respondent eventually rehired Sipka in 1992. During the period from 1988 until his reemployment, Sipka was unable to obtain a full-time teaching position. In 1988, he did some substitute teaching for respondent as well as with the Akron City School District. Sipka also received unemployment compensation. Sipka's total income for 1988, as stipulated by the parties, was $4,924.91. In 1989, Sipka earned more income by working as a substitute teacher and teacher of summer/evening classes for respondent and as a substitute for Akron City Schools. He also obtained a full-time position with Ace Precision Industries and received some self-employment income. The parties stipulated that his total earnings for 1989 were $17,790.04.
In 1990, Sipka obtained a full-time position at the Akron Machining Institute as an instructor. He also worked as an adult-education evening class instructor for respondent and as an evening apprenticeship class instructor at the Portage Lakes Joint Vocational School. Sipka's salary at the vocational school was paid for by both the Portage County Joint Vocational School District and the Akron Chapter National Tool and Die Precision Machining Association. Sipka earned an income totaling $35,496.50 for 1990. Throughout 1991 Sipka kept his positions at the Akron Machining Institute and at the vocational school and earned $37,395.35. In 1992, Sipka kept his employment at the institute and the vocational school until he began teaching full-time for respondent. His income for this year prior to his reemployment with respondent was $24,748.10.
At the time respondent laid off Sipka, he possessed a master's degree and had earned an additional thirty credit hours of graduate work. Furthermore, he had earned twenty-six years of service credit with respondent, including two years of military service. According to the parties' joint stipulation of facts, if respondent *Page 370 
had employed Sipka between 1988 and 1992, his earnings based on a salary schedule of a teacher with a master's degree plus thirty credit hours and with at least twenty-five years of service would be as follows: (1) 1988-1989: $35,020; (2) 1989-1990: $36.560; (3) 1990-1991: $38,000; and (4) 1991-1992: $38,624.
The parties also filed with this court a supplemental joint stipulation of facts and exhibits concerning the amount of service credit earned by Sipka towards his retirement. The parties stipulated that Sipka would have earned four years of retirement service credit if he had been employed by respondent during the layoff. The parties also stipulated the State Teachers Retirement System ("STRS") did award Sipka 2.34 years of retirement service credit for this period.
This court referred the parties to a referee to present testimony. Sipka was the only witness who testified. Sipka testified that he was laid off for four years and that despite his efforts he could not secure another full-time public school teaching position. Sipka then went on to describe the various jobs he worked during the four years. In addition, Sipka stated that while he was teaching, he used to work during summers to supplement his income. He stated that he worked at various machine shops, was self-employed, and even tried selling insurance. Moreover, he stated that he worked evening hours during various school years. He further testified that respondent did not prohibit additional employment during the summers and evenings, and he also stated that he knew of many teachers who worked second jobs to earn additional money. Respondent did not contest this testimony.
 II
Relators raise two specific issues about their damages. First, they argue that the respondent is not entitled to deduct from the damage award income earned by Sipka from summer and evening employment. Second, relators argue that Sipka, who was required to pay social security and medicare taxes during his non-public-school employment, should receive damages equivalent to these taxes. In the alternative, they contend that respondent should make the employee contributions to the STRS. Relators also argue that Sipka should receive his full retirement service credit.
 A
The first issue raised by relators concerns the actual compensatory damages due to Sipka. Relators argue that the formula for calculating the compensatory damages is simple: Sipka should receive the difference between what he actually earned during the four-year layoff and what he would have earned if he had been employed as a full-time teacher. Relators contend the damage award can be calculated with certainty. Relators also argue that the amount of his actual *Page 371 
earnings during the four years should not include the wages earned during Sipka's summer and evening employment.
A wrongfully discharged public employee may maintain an action in mandamus to recover compensation due for the period of exclusion from the employment, "provided the amount recoverable is established with certainty." Monaghan v. Richley (1972),32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. This compensation is subject to reduction by the amount the employee earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion. State exrel. Martin v. Columbus (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph two of the syllabus; State exrel. Wilcox v. Woldman (1952), 157 Ohio St. 264, 47 O.O. 164,105 N.E.2d 44, paragraph one of the syllabus. Furthermore, the employer bears the burden of showing what the employee earned during the period of wrongful discharge, State ex rel. Hamlin v.Collins (1984), 9 Ohio St.3d 117, 119, 9 OBR 342, 343-344,459 N.E.2d 520, 523, or what the employee could have earned in mitigation of damages. State ex rel. Martin v. Bexley Bd. ofEdn. (1988), 39 Ohio St.3d 36, 38, 528 N.E.2d 1250, 1251-1252. Absent such proof, the employee should recover the amount of the salary fixed by contract. Id., citing 11 Williston, Contracts (3 Ed. 1968) 312, Section 1360.
According to the parties' joint stipulations of fact, if respondent had employed Sipka for the four-year period, he would have earned the following salaries:
 1988-1989: $ 35,020.00 1989-1990: $ 36,560.00 1990-1991: $ 38,000.00 1991-1992: $ 38,624.00 Total: $148,204.00
Furthermore, the parties submitted that Sipka actually earned the following salaries over the period:
1988: $ 4,924.91 1989: $ 17,790.04 1990: $ 35,496.50 1991: $ 37,395.35 1992: $ 24,748.10 (includes only up until reemployment) Total $120,354.90
Sipka's actual salary included wages earned for employment performed during summer and evenings. The breakdown for these wages is as follows: *Page 372 
 1988: $ 0 1989: $ 4,928.43 1990: $ 6,281.25 1991: $ 11,496.70 1992: $ 8,156.00 Total: $ 30,862.38
Subtracting the summer/evening employment earnings from the total actual earnings ($120,354.90) equals $89,492.52. Relators argue this figure should be subtracted from the amount Sipka could have earned with respondent in order to reach the amount of compensatory damage. Doing so results in an amount of $58,711.48. Relators contend that the earnings acquired from summer/evening employment should not be subtracted in the calculation of Sipka's mitigated damages. Relators argue that Sipka could have earned these wages even if he had been employed by respondent, because Sipka worked for respondent only during the day and had in fact worked additional jobs during summers and evenings for many years during his employment with respondent. Because Sipka had the ability to earn additional income, relators urge this court not to account for that earning ability in the calculation of damages.
Respondent disagrees with relators' contentions and counters that Sipka's employment constituted employment similar to what he performed as a teacher for respondent. Respondent relies onState ex rel. Martin v. Columbus (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123. In Martin, the Supreme Court held that a wrongfully discharged employee need only accept similar employment in order to mitigate damages. Id. at 264, 12 O.O.3d at 269-270, 389 N.E.2d at 1124-1125. The Supreme Court explained that the employee is duty bound "`to use ordinary diligence to make the damage as light as may be, * * [and] must use ordinary care to obtain employment. He may not be required to seek elsewhere, or to engage in a different industry. But he is bound to use ordinary effort to obtain similar employment in the same vicinity.'" Id., quoting James v. Allen County (1886), 44 Ohio St. 226,233-234, 6 N.E. 246, 249-250. Respondent points to Sipka's summer and evening employment as constituting similar employment because his primary duty in these jobs was to teach, either as a substitute teacher or as an instructor in private industry. Respondent argues that this employment should count as part of Sipka's mitigated earnings because he "utilized his education and experience, as he was employed as a teacher or instructor in those positions. * * * Because the summer and evening positions in which Relator Sipka was employed utilized his education and experience, it would appear that, pursuant to the Court's analysis in Martin, those positions *Page 373 
were `similar' or `appropriate' positions for Relator Sipka." Thus, Sipka mitigated his damages by working in the summers and evenings.
While the Supreme Court of Ohio has not specifically addressed the issue before this court, the Supreme Court of Alaska has provided guidance in its decision of Redman v. Dept.of Edn. (Alaska 1974), 519 P.2d 760. In that case, Colleen Redman worked as a teacher until she was wrongfully discharged by the department of education. She had lost two years of work and mitigated her damages by her employment with the state highway department between the months of May and October 1971.Id. at 770. She presented this employment as evidence of her mitigation.
The Supreme Court of Alaska accepted her highway department employment as successful mitigation. However, when calculating the amount of compensatory damages, the court had to take into account the state department of education regulation forbidding outside employment by teachers during the ten-month period per year that the teachers worked in the school systems. The court ruled that:
"Where an employee's wrongful discharge frees him to take another job he could not have held had he been retained, the employee can recover as damages only the difference between his actual earnings and the amount he would have earned in his old job. This result is normally achieved by reducing the employee'saward by the amount earned from substituted employment thatwould have been incompatible with his former employment." (Emphasis added; footnote and citations omitted.) Id. at 771.
The court determined that Redman could recover the difference between her salary as if she had been employed as a teacher and her actual salary at the highway department during two summer months. The court further stated:
"Here, [Redman's] `period of employment' with Education under the contract to which she was entitled would have been no more that ten months. Thus she would have been free to work for the Department of Highways for at least two months during the May-October period without coming in conflict with the prohibition of [the regulation]. Consequently we hold that [Redman's] award must be increased by an amount representing two months' salary for the Department of Highways job." (Footnote omitted.) Id.
The key to Redman is the incompatibility of certain earnings in mitigation with the earnings the discharged employee could have earned. The Alaska Supreme Court determined that the lower court erred by subtracting the full amount of Redman's highway department salary from what she could have earned as a teacher. The court recognized that although department of education regulations prohibited outside work during the ten-month academic year, no prohibition *Page 374 
existed for the two months Redman was off during the summer. In other words, she could work an extra job during her vacation. Because Redman's employment during summer vacation was not incompatible with her normal academic employment, the salary she earned during the summer would not be considered in determining the amount of her mitigation. Consequently, when computing her compensatory damages, the court would subtract from her contractual salary only that portion of her actual salary that she earned when she would have otherwise been employed as a teacher.
This court finds that Redman is persuasive, and we apply it to the issue raised by relators. When Sipka testified before the referee, he stated that he had worked many summers and evenings during his tenure as a full-time teacher prior to the layoff. He also testified that other teachers did the same and that respondent had no prohibition against outside work that did not conflict with teaching responsibilities. Respondent did not controvert this evidence. Because respondent permitted outside work, such work was not incompatible with Sipka's teaching duties. Thus, any salary earned during the summers and evenings of the layoff could have been earned by Sipka while he was employed in a full-time capacity by respondent. Consequently, this court will subtract from Sipka's contractual salary only that portion of his actual salary that he earned during the time he would have been employed by respondent. This court therefore holds that the formula for calculating compensatory damages in this case is as follows: Sipka's salary under the contract minus his actual salary during the layoff except wages earned during summer and evening hours.
Sipka earned a total sum of $120,354.90 over the layoff. Of this amount, $30,862.38 consisted of summer and evening wages. Subtracting these two figures yield total actual earnings in mitigation of $89,492.52. Subtracting this amount from what his contractual salary would have been, $148,204.00, yield a compensatory award of $58,711.48. Therefore, this court orders that respondent pay Sipka compensatory damages in the amount of $58,711.48.
 B
In their second issue, relators raise arguments about the payment of medicare and social security taxes as well as the accounting of STRS retirement service credit. Concerning the payment of taxes, relators argue that respondent should reimburse Sipka for the amount of social security and medicare taxes deducted from his salary during the layoff. They contend that because he had to obtain employment in the private sector, he lost his state employee exemption from federal withholding of these taxes. Therefore, because respondent was the root cause of his termination, it should reimburse him for these taxes. *Page 375 
In general, an employee must pay social security and medicare taxes. See Section 410, Title 42, U.S.Code. Some employees do fall within the exception to this general rule and receive an exemption from federal withholding. See id. and Sections 404.1012-404.1037, Title 20, C.F.R. Sipka's state employment provided him with an exemption from payment of social security taxes. See Section 410(a)(7), Title 42, U.S.Code; Section 404.1020(a), Title 20, C.F.R.
The basic rule as it applies to this case is that unless Sipka was working for the state he had to pay his federal taxes. "The obligation to pay the social security [and medicare] tax initially is not fundamentally different from the obligation to pay income taxes; the difference — in theory at least — is that the social security tax revenues are segregated for use only in furtherance of the statutory program." United States v. Lee
(1982), 455 U.S. 252, 260, 102 S.Ct. 1051, 1056, 71 L.Ed.2d 127,134. Sipka thus was under an obligation to pay these federal taxes whenever he undertook nonstate employment. For example, when he worked for nonstate employers during summers and evenings before his termination, Sipka had to pay his federal share. Likewise, he did so after his termination. This court does not see a difference between the two. Although Sipka had to exercise due diligence to find new work after his termination, there was no requirement that he find employment outside the state public sector. Employment in the private sector will generally remove the exemption for social security withholding enjoyed by employees of the state of Ohio no matter when that private sector employment occurs. Thus, Sipka cannot escape the inevitable certainty of federal tax liability that is commensurate with private sector employment. Therefore, respondent does not have to reimburse Sipka for the federal taxes.
We now turn to the issue of STRS credit. In their joint stipulations of fact, the parties stated that "[a]s a result of the suspension of his continuing contract, Relator has lost a total of 1.9 years of service credit in the State Teachers Retirement System." In their joint supplemental stipulation, the parties indicated a total of 2.34 years of service credit was awarded to Sipka. Because Sipka would have received a total of four years of credit if respondent had employed him, this court orders STRS to credit Sipka for 1.66 years of retirement service credit, which is the difference between 4.0 and 2.34.
The remaining question concerning STRS is who is responsible for making the contributions to the STRS system. The parties stipulated that Sipka "lost the employer contributions Respondent Board would have made to the State Teachers Retirement System on the wages he would have earned had he been continuously employed by Respondent Board." Furthermore, "[i]f Relator Sipka is awarded back compensation, the State Teachers Retirement System will require that interest be paid on any employer or employee contribution that is *Page 376 
received over two (2) years after the year for which the contribution is to be credited."
If Sipka had worked for respondent he would have paid his employee contribution and respondent would have paid its employer contribution during the four-year period. R.C. 3307.51
and 3307.53. In order to make up any employer contribution deficiency, this court orders respondent to pay into STRS the employer share that it would have paid if Sipka had been employed. Moreover, this court orders respondent to pay any interest due on the STRS employer and employee contributions.
Relators contend that respondent should also pay the actual employee contribution. This court does not agree. If Sipka had taught at the school during this period, he would have paid his employee contribution to STRS pursuant to R.C. 3307.51. Because Sipka would have had to pay this employee contribution in the absence of termination, we cannot sanction employer responsibility for the employee contribution. To do so would contravene the principle that the purpose of damages for breach of contract is to "place the aggrieved party in the same economic position he would have had if the contract had been performed." Calamari Perillo, The Law of Contracts (3 Ed. 1987) 591, Section 14-4; 3 Restatement of the Law 2d, Contracts (1981) 157, Section 356, Comment a; see, also, Anderson v. Lorain Cty.Title Co. (1993), 88 Ohio App.3d 367, 374, 623 N.E.2d 1318, 1323
("The wrongfully discharged employees must be restored to the economic position in which they would have been but for the discharge."). To order respondent to pay the employee contribution would place Sipka in a better position than he would have been prior to the breach, because respondent would be paying an amount that Sipka normally would have contributed. Therefore, any deficiency in the employee contribution must be paid by Sipka.
 III
In conclusion, this court orders the following: (1) a writ of mandamus shall issue to respondent; (2) respondent shall pay to Sipka $58,711.48 in compensatory damages; (3) STRS shall credit Sipka with 1.66 years of retirement service credit; (4) respondent shall pay to the STRS the employer contribution due Sipka; and (5) respondent shall pay any interest accruing from the deficient STRS employer and employee contributions.
Judgment accordingly.
QUILLIN, P.J., and BAIRD, J., concur.
EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment. *Page 377