[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Plaintiff-appellant, Joseph L. Bertolini, appeals from a judgment of the Franklin County Court of Common Pleas, in which the trial court denied appellant's motion to compel appellee, Whitehall City School District Board of Education ("board"), to reinstate him as an associate superintendent and sustained appellee's motion for clarification regarding the appropriate amount of damages due.
 {¶ 2} On May 20, 1997, the board adopted a resolution to employ appellant as an associate superintendent for Whitehall City Schools. Several days later, appellant signed a four-day contract and a two-year limited contract. Covering the 1997-1998 and 1998-1999 school years, the two-year limited contract was to be effective from July 28, 1997 through July 31, 1999. Thus, on July 28, 1997, Mr. Bertolini commenced working as a certificated administrator within Whitehall City Schools.
 {¶ 3} However, on February 21, 1998, Whitehall's superintendent informed appellant that he was being suspended pending the investigation of certain complaints lodged against him. Subsequently, on March 13, 1998, appellant received a letter notifying him of the board's intention to consider the termination of his contract. The letter included a statement of the proposed grounds for termination and advised appellant of his rights regarding the termination proceedings under R.C. 3319.16. Accordingly, appellant filed a timely written demand for a hearing before a referee.
 {¶ 4} In June 1998, a magistrate conducted a thorough evidentiary hearing spanning several days, during which both parties argued the propriety of appellant's termination. In a lengthy opinion that included numerous findings of fact and conclusions of law, the referee recommended, in pertinent part, that Mr. Bertolini be "reinstated to his position with the Whitehall City School District, and that he be paid his full salary for the full period of suspension." Nonetheless, on October 14, 1998, the board unanimously rejected the referee's recommendations and voted to terminate appellant's contract, effective as of his February 21, 1998 suspension.
 {¶ 5} Following the procedures set forth in R.C. 3319.16, appellant filed a complaint appealing the board's decision with the Franklin County Court of Common Pleas on November 6, 1998. Therein, appellant requested that the court enter an order (1) "reversing the School Board's termination of the contract of Joseph Bertolini," and (2) "reinstating Joseph Bertolini to his position with the Whitehall City School District with full back salary and benefits." Appellant further sought to have the charges and the record of the hearing before the referee physically expunged from the board's minutes, as well as other appropriate relief.
 {¶ 6} While the case was pending before the trial court, the board acted to non-renew appellant's contract pursuant to the statutory provisions of R.C. 3319.02. By a letter dated March 12, 1999, the board notified appellant that his limited administrator's contract was set to expire on July 31, 1999, and that he was entitled to request a meeting with the board to discuss the renewal or non-renewal of that contract. The board received no response. Thus, on March 23, 1999, the board approved Resolution #39-99, which officially announced that appellant's contract would not be renewed. By a letter dated March 24, 1999, appellant received notification of the board's action.
 {¶ 7} On November 4, 1999, the trial court entered judgment affirming the termination of appellant's contract, prompting him to file a notice of appeal. Subsequently, on September 26, 2000, this court reversed the trial court's judgment and remanded the case back to that court "to grant the relief prayed for in appellant's complaint as the trial court may find proper * * *." Bertolini v. Whitehall City School Bd. of Edn. (2000), 139 Ohio App.3d 595, 610 ("Bertolini I"). Subsequently, the board filed a motion for a stay of judgment with the Ohio Supreme Court, which was denied on December 20, 2000, and a motion for jurisdiction before that court, which was denied on February 14, 2001.
 {¶ 8} On January 10, 2001, the trial court filed a judgment entry reflecting the order of this court, which remanded the case to the board "with instructions to reinstate Joseph Bertolini to his position as associate superintendent for Whitehall City Schools and to pay him the salary he lost on the unexpired term of his contract from the date of his termination."
 {¶ 9} Prompted by the January 10, 2001 entry, the board filed two post-judgment motions with the trial court on February 5, 2001. First, the board filed a motion for clarification, which raised the question of whether appellant could be reinstated to an expired contract. And, second, the board filed a motion for a hearing on mitigation of damages, raising the issue of whether deductions should be made for the wages earned, and disability benefits received, by appellant during the period of his wrongful termination.
 {¶ 10} Appellant timely filed responsive memoranda in opposition of the board's motions. On November 6, 2001, appellant filed a notice of supplemental authority to inform the trial court that, per the guidelines of R.C. 3307.64, the State Teachers Retirement System ("STRS") acted to terminate appellant's disability benefits, part of which were paid out over the disputed contract term. A letter dated October 29, 2001, attached to the filing, notified the parties that those benefits would terminate on the earlier date of August 31, 2002 or appellant's reinstatement. Furthermore, on March 29, 2002, appellant filed a motion to compel the board to reinstate him to the associate superintendent position according to the trial court's January 10, 2001 judgment entry. The board moved to strike both pleadings and continued to refute any obligation to reinstate appellant to his former position.
 {¶ 11} On July 23, 2002, the trial court issued a judgment entry disposing of the issues raised by the parties' collective post-judgment motions. Therein, the trial court held that, as the board acted to properly terminate appellant's limited contract pursuant to the non-renewal procedures of R.C. 3319.02, appellant was not entitled to reinstatement as associate superintendent. Nor was he entitled to reinstatement as a teacher, a right first asserted by his memorandum contra the board's post-judgment motions. Finally, the court held that appellant was entitled to back pay from the date of his termination, February 21, 1998, through the expiration of his contract on July 31, 1999. However, the court further concluded that the amounts earned by appellant from other employment during that time, as well as the disability benefits he received through STRS, were to be deducted from the overall award.
 {¶ 12} It is from that judgment that appellant timely appeals, raising the following seven assignments of error:
 {¶ 13} "Assignment of Error No. 1
 {¶ 14} "The Court of Common Pleas erred as a matter of law in failing to reinstate the Plaintiff to his position as an Associate Superintendent with Defendant.
 {¶ 15} "Assignment of Error No. 2
 {¶ 16} "The Court of Common Pleas erred as a matter of law in ruling that the Plaintiff's limited contract had been properly non-renewed by the Defendant.
 {¶ 17} "Assignment of Error No. 3
 {¶ 18} "The Court of Common Pleas erred as a matter of law in failing to reinstate the Plaintiff, in the alternative, to a position as [a] tenured teacher within the Whitehall City School District.
 {¶ 19} "Assignment of Error No. 4
 {¶ 20} "The Court of Common Pleas erred as a matter of law in failing to award back-pay to the Plaintiff for contract years subsequent to July 31, 1999.
 {¶ 21} "Assignment of Error No. 5
 {¶ 22} "In awarding back-pay to the Plaintiff for the period from the date of his wrongful termination through the end of his then-current period (that is, from February 21, 1998 through July 31, 1999), the Court of Common Pleas erred as a matter of law in reducing such award by the amounts the Plaintiff received in wages from other dissimilar employment during such period.
 {¶ 23} "Assignment of Error No. 6
 {¶ 24} "In awarding back-pay to the Plaintiff for the period from the date of his wrongful termination through the end of his then-current period (that is, from February 21, 1998 through July 31, 1999), the Court of Common Pleas erred as a matter of law in reducing such award by the amount of the disability payments the Plaintiff received from the State Teachers Retirement System from and after November 1, 1998.
 {¶ 25} "Assignment of Error No. 7
 {¶ 26} "The Trial Court Erred in Failing to Award Post-Judgment Interest From the Date of Its January 10, 2001 Judgment Entry."
 {¶ 27} Appellant's first, second and fourth assignments of error are interrelated and will be addressed together. Essentially, appellant asserts that, in leaving the non-renewal of his administrator's contract undisturbed and, therefore, holding that he was not entitled to reinstatement as associate superintendent, the trial court failed to "grant the relief prayed for in appellant's complaint" as instructed by this court in Bertolini I. Indeed, appellant contends that the board's non-renewal action is a "nullity" with no effect, deeming it contrary to law. Consequently, appellant argues that his contract was renewed automatically and continually in one-year increments from the expiration date of his original contract, pursuant to R.C. 3319.02. Thus, appellant claims entitlement to a back pay award representing the years following the first contract through his reinstatement.
 {¶ 28} In contrast, the board asserts that the non-renewal was properly executed in compliance with the statutory mandates of R.C. 3319.02. Consequently, there is no right to reinstatement beyond the constraints of appellant's limited contract, and appellant received the exact relief prayed for-reinstatement to his original administrator's contract, which expired on July 31, 1999. As a result, the board maintains that the trial court correctly denied compensation reflecting dates subsequent to the expiration of his initial contract.
 {¶ 29} As an administrator with a limited contract, appellant is subject to the employment provisions in R.C. 3319.02. In regard to the renewal of an administrator's contract, R.C. 3319.02(C) provides, in pertinent part:
 {¶ 30} "An assistant superintendent, principal, assistant principal, or other administrator is, at the expiration of the current term of employment, deemed reemployed at the same salary plus any increments that may be authorized by the board, * * * unless such board, on or before the last day of March of the year in which the contract of employment expires, either reemploys such employee for a succeeding term or gives written notice of its intention not to reemploy the employee. The term of reemployment of a person reemployed under this paragraph shall be one year, except that if such person has been employed by the school district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years of more, the term of reemployment shall be two years."
 {¶ 31} In its analysis of R.C. 3319.02, the Ohio Supreme Court has repeatedly held that "written and timely notice is mandatory under R.C.3319.02(C) and that noncompliance results in renewal of the contract." State ex rel. Donaldson v. Athens City School Dist. Bd. of Edn. (1994),68 Ohio St.3d 145, 147, citing State ex rel. Luckey v. Etheridge (1992),62 Ohio St.3d 404, syllabus; State ex rel. Brennan v. Vinton Cty. Local School Dist. Bd. of Edn. (1985), 18 Ohio St.3d 208. Indeed, while interpreting the version of R.C. 3319.02 effective during the instant case, the Court clarified that the statute "* * * deems an administrator reemployed by operation of law only if a timely written notice of the board's intention not to reemploy is not given." State ex rel. Martines v. Cleveland City School Dist. Bd. of Edn. (1994), 70 Ohio St.3d 416,417, quoting State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 222. It further noted that "as between violations of R.C. 3319.02(C) and (D) [regarding evaluation procedures], only the failure to provide timely written notice of a board of education's intention not to renew an administrator's contract will require the remedy [requested] — a writ of mandamus to compel contract renewal, including reinstatement, back pay and benefits." Martines, supra, at 418-419. In other words, a board has extensive discretion in determining issues of contract renewal; therefore, absent a violation of the notice requirements, a board's decision to non-renew an administrator's contract under R.C. 3319.02 is not subject to scrutiny.
 {¶ 32} In the instant case, appellant does not dispute that he was provided with timely, written notice of the board's decision to non-renew his contract. Instead, he asserts that the board's decision to non-renew his previously terminated contract reflects a bad faith attempt "to get rid of him in any way it could," and should be declared void. The cases cited by appellant to support this argument are inapposite, as they concern situations in which a board acted in deliberate disregard of statutory procedure. Smith v. Etheridge (1992), 65 Ohio St.3d 501; Hutchinson v. South Point Local School Bd. (Oct. 4, 1982), Lawrence App. No. 1509. Here, there is nothing in the record to indicate that the board acted in bad faith rather than in accordance with statutory mandate. In fact, at the time of non-renewal, appellant's complaint appealing his termination was pending before the trial court. With no final determination as to whether there was an effective contract, it cannot be said that the board was acting in bad faith by initiating the non-renewal process. As such, there is no reason to deviate from the principle that only inadequate notice under R.C. 3319.02(C) nullifies a board's non-renewal decision. Thus, we find appellant's argument unpersuasive.
 {¶ 33} Alternatively, appellant alleges that the board's non-renewal action should be vacated as conflicting with the disability leave provisions of R.C. 3307.64. Appellant, as a disability benefit recipient, retains membership in STRS and "shall be considered on leave of absence during the first five years following the effective date of a disability benefit." R.C. 3307.64. STRS designated November 1, 1998, as the effective date of appellant's disability leave. Therefore, appellant contends that the non-renewal action taken in March 1999, almost five months after the commencement of his disability leave, is void.
 {¶ 34} The statute also requires that a recipient submit to an annual examination to evaluate his or her current state of disability, unless that disability has been certified as ongoing. R.C. 3307.64. Following one such examination, the STRS Medical Review Board determined that appellant was "not currently medically incapacitated from contributing service" and recommended the termination of his benefits. The State Teachers Retirement Board agreed; therefore, appellant's disability benefit was set to terminate on August 31, 2002, or on the day prior to reemployment if he returned to service.
 {¶ 35} R.C. 3307.64 further provides that if such a determination is made within the five year leave of absence, STRS shall "certify to the disability benefit recipient's last employer before being found disabled that the recipient is no longer physically and mentally incapable of resuming service that is the same or similar to that from which the recipient was found disabled." And, "[i]f the recipient was under contract at the time the recipient was found disabled, the employer by the first day of the next succeeding year shall restore the recipient to the recipient's previous position and salary or to a position and salary similar thereto," unless circumstances not applicable here are present. R.C. 3307.64.
 {¶ 36} According to appellant's argument, because his termination was deemed wrongful, he was still under contract in November 1998, the effective date of his disability payments. Therefore, not only was the non-renewal of his contract a nullity, the mandatory language of R.C.3307.64 demands that he be restored to his previous position. However, after close analysis of both the statute and the record, we do not agree.
 {¶ 37} A letter, dated May 15, 2001, to both parties from STRS indicates that a "determination of eligibility" for disability benefits was not made until November 1, 1999. And, "benefits at that point were granted retroactive to November 1, 1998," the "effective date." According to that letter, appellant was not found to be disabled until November 1999-a year after the declared effective date, approximately seven months after the board non-renewed his contract, and three months after his contract expired. Therefore, contrary to appellant's argument, he was not "under contract at the time [he] was found disabled." Furthermore, no determination of appellant's eligibility for disability benefits had been made at the time the board voted to non-renew appellant's contract. As such, there is no indication that the board consciously acted to non-renew appellant's contract in order to circumvent the reinstatement provision of R.C. 3307.64. Though the statute measures the five-year leave of absence from the effective date of the disability benefit, we do not believe that this language is intended to act retroactively to strip a board of its power, as granted by R.C. 3319.02, to otherwise properly non-renew an administrator's limited contract.
 {¶ 38} The board's strict compliance with R.C. 3319.02(C) and apparent good faith prevent invalidation of its ultimate decision to non-renew appellant's contract. Thus, appellant's limited contract expired on July 31, 1999. The trial court awarded appellant back pay from the date of his suspension through the expiration of his contract on July 31, 1999, less amounts in mitigation. The award represents the unexpired term of his contract as an associate superintendent, i.e., reinstatement to his former position, and constitutes an adequate remedy. As an administrator with "a limited contract which was subsequently properly terminated," appellant has "no right to a contract extension beyond the period for which he has been adequately compensated." Frith v. Bd. of Edn. Princeton City School Dist. (July 14, 1982), Hamilton App. No. C-810789. Similarly, appellant is not entitled to a back pay award encompassing any period of time beyond the expiration of that limited contract. Accordingly, appellant's first, second and fourth assignments of error are overruled.
 {¶ 39} Alternatively, appellant's third assignment of error argues that, even if he is not entitled to reinstatement as associate superintendent, his alleged status as a tenured teacher within the Whitehall City School District warrants his reinstatement as a teacher. Thus, the trial court erred in failing to reinstate him as a tenured teacher. We disagree.
 {¶ 40} R.C. 3319.16 governs the termination of appellant's contract by the board, including appellant's subsequent appeal to the trial court. The statute provides that "[t]he appeal shall be an original action in the court and shall be commenced by the filing of a complaint against the board, in which complaint the facts shall be alleged upon which the teacher relies for a reversal or modification of such order of termination of contract." The board is then responsible for providing the court with the current record, including transcripts of all evidence adduced at any hearings. After examining the provided materials, the court is permitted to hold additional hearings as it finds appropriate. "Upon final hearing, the court shall grant or deny the relief prayed for in the complaint as may be proper in accordance with the evidence adduced in the hearing. Such an action is a special proceeding * * *." In other words, the trial court's power to craft a remedy is limited by the specific relief prayed for within the complaint, as supported by the presented evidence.
 {¶ 41} As set forth in the facts, appellant's complaint prayed for an order reversing the board's termination of his contract and reinstating him to his position with full back salary and benefits. In the first paragraph of the complaint, appellant described the nature of the action as an appeal of the board's rejection of the referee's recommendation of reinstatement and of the subsequent termination of his contract. Appellant next stated that "[a]t all times relevant herein, plaintiff Joseph Bertolini held an administrative contract as the Associate Superintendent of the Whitehall City School District. The position was also known as Assistant Superintendent." Throughout the remainder of the complaint, appellant references his contract and position only in conjunction with his administrative position. In fact, there is no discernible indication that appellant-if not reinstated to his position as associate superintendent-desired reinstatement as a teacher. As the board correctly noted, appellant simply did not claim entitlement to reinstatement as a tenured teacher prior to his memorandum contra the board's post-judgment motions.
 {¶ 42} Therefore, given the language of R.C. 3319.16, which constrains the trial court's action to granting or denying only the requested relief, it was not error for the trial court to refuse to order appellant's reinstatement as a teacher. Consequently, appellant's third assignment of error is overruled.
 {¶ 43} We now turn to the ultimate amount of appellant's back pay award. Appellant's fifth assignment of error challenges the trial court's deduction of wages earned by appellant in dissimilar employment during the term of his wrongfully terminated contract. Similarly, in his sixth assignment of error, appellant argues that the back pay award should not have been reduced by the amount of the disability payments he received from STRS during the relevant period. We will address each in the order presented.
 {¶ 44} It is well-settled that a public employee, such as appellant, "* * * who is wrongfully excluded from his position and sues to recover compensation for the period of exclusion, is subject to have his claim reduced by the amount he earned or, in the exercise of due diligence, could have earned in appropriate employment during the period of exclusion." State ex rel. Martin v. City of Columbus, Dept. of Health (1979), 58 Ohio St.2d 261, paragraph two of the syllabus, approving and following State ex rel. Wilcox v. Woldman (1952), 157 Ohio St. 264. "In addition, a wrongfully discharged employee need only accept `similar' employment in mitigation." Martin, supra, at 264. Indeed, though the wronged employee is obligated to use ordinary effort to obtain employment, "[h]e may not be required to * * * engage in a different industry," in order to fulfill the due diligence requirement. Id., quoting James v. Bd. of Commrs. of Allen County (1866), 44 Ohio St. 226,233. Furthermore, because mitigation of damages is an affirmative defense, the employer responsible for the wrongful discharge bears the burden of proof. Martin, supra, paragraph three of the syllabus.
 {¶ 45} It is not disputed that appellant, who had submitted numerous applications for similar administrative positions in different Ohio school districts, exercised due diligence in seeking similar employment. But, appellant cites the foregoing language as support for his contention that dissimilar wages-i.e., the wages earned by appellant in various retail and sales positions-should not be deducted from his full back pay award. Appellant further relies on the Schlotterer v. Board of Edn., Coldwater Exempted Village School Dist. (Apr. 26, 1983), Mercer App. No. 10-82-2, in which the court, applying the same language, held that wages "not even remotely of a `similar nature' " should not be subtracted from a back pay award. Schlotterer, supra. However, we find appellant's reliance on the cited cases to be misplaced.
 {¶ 46} The issue addressed by the court in Martin, was whether the plaintiff had exercised due diligence in seeking employment after his wrongful discharge. Thus, the court did not engage in a discussion regarding the disposition of amounts earned in dissimilar employment. However, in cases that have directly handled the issue, the Ohio Supreme Court has been clear that "the amount of interim earnings is to be deducted from an award of back pay," thus mitigating the employer's obligation. State ex rel. Hamlin v. Collins (1984), 9 Ohio St.3d 117,119. Still, in accordance with the Martin court's analysis, when calculating the correct reduction from the wronged employee's back pay award "* * * the burden of showing what an employee earned during the period of wrongful discharge rests upon the employer." State ex rel. Martin v. Bexley City School Dist. Bd. of Edn. (1988), 39 Ohio St.3d 36,39, citing Hamlin, supra.
 {¶ 47} In the case sub judice, there is no dispute that appellant earned $11,837.69 in "non-education" employment during the relevant period of exclusion. Therefore, based on the above analysis, it is equally clear that the trial court correctly deducted that amount from appellant's back pay in calculating the final amount of damages due. Appellant's argument in this regard must fail.
 {¶ 48} Appellant further submits that his back pay award was improperly reduced by the amount of disability payments he received from STRS. The trial court relied on Lynch v. Chupka (Apr. 29, 1980), Franklin App. No. 79AP-803, in determining that the challenged disability payments should be subtracted from appellant's award. Appellant asserts that Lynch is not controlling in this case because the payments in issue were tendered under separate statutory schemes. However, we find that difference to be inconsequential.
 {¶ 49} In Lynch, this court addressed a similar situation in reviewing the back pay award of a wrongfully excluded Fire Battalion Chief for the city of Columbus. Therein, we concluded that the plaintiff was entitled to reinstatement commencing July 1, 1974. Consequently, we held that his back pay award was to be reduced by "amounts which he received in mitigation of damages through a disability pension from the Firemen's Pension Board from July 1, 1974 until September 3, 1975." Lynch, supra. That amount was subtracted because the plaintiff was to receive his salary as though he were reinstated to employment on July 1, 1974, and the disability pension "would not have been applicable after reemployment." Id.
 {¶ 50} Though the Firemen's Pension Board and the State Teachers Retirement Board are clearly separate entities that operate under different statutory schemes, the logic applied in Lynch is equally germane to the present case. Just as the fireman's disability pension is not applicable upon reemployment, the board would not be obligated to pay appellant's salary upon his acceptance of total disability payments from STRS. In other words, regardless of his termination, the board's duty to pay appellant ceased upon appellant's receipt of disability payments. Therefore, as appellant would not have collected pay from the board during the relevant period, the trial court correctly concluded that the disability payments appellant received during the contract term should be deducted in mitigation.
 {¶ 51} Furthermore, that conclusion comports with the notion that the general purpose of an award of compensatory damages is to put the aggrieved party in the same position in which he would have been but for the wrongful discharge. Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn. (1996), 112 Ohio App.3d 366, 376.
 {¶ 52} In counterpoint, appellant argues that, in order to be made truly whole, he must be compensated for the entire term of his contract or the board must reimburse STRS for the disability payments received during that period. In essence, appellant asserts that, because of his wrongful termination, he applied for and received full medical disability benefits from STRS. And, so appellant may now reclaim the retirement service credits lost during his wrongful exclusion, the board must offset its wrongdoing by reimbursing him, or STRS directly, for the disability payments he received for dates corresponding to that time. However, the record provides no evidence that appellant was compelled to apply for and receive benefits due to any action by the board; in fact, all indications are to the contrary. Appellant was granted total medical disability in November 1999, effective retroactively to November 1998. And, he was not declared capable of returning to his position until October 2001, which is well after his contract expired. Therefore, we conclude that the board should not be held accountable for the disability benefits that, by all accounts, appellant voluntarily sought. Indeed, STRS stated, in a November 13, 2000 letter to appellant explaining his retirement options, that it is appellant who "would be responsible for reimbursing STRS." Appellant's argument to the contrary is not well-taken.
 {¶ 53} In sum, we find that the trial court properly reduced the back pay award by the amounts representing both the wages earned, and the disability benefits received, by appellant during the relevant period of his contract. Accordingly, appellant's fifth and sixth assignments of error are overruled.
 {¶ 54} In his seventh assignment of error, appellant claims entitlement to an award of post-judgment interest from the trial court's January 10, 2001 judgment entry. The board, on the other hand, maintains that it is not liable for such interest when the actual amount it was obligated to pay had not been ascertained. However, the board does not dispute liability for post-judgment interest on the amount stated in, and computed from, the July 23, 2002 judgment entry.
 {¶ 55} As is applicable here, R.C. 1343.03, which governs the award of post-judgment interest, provides that "* * * when money becomes due and payable * * * upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *." R.C. 1343.03(A). As appellant correctly notes in his brief, wrongfully discharged employees are entitled to post-judgment interest on an award of back pay. State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn. (1997),78 Ohio St.3d 37, 45. Indeed, a prevailing party is entitled to that interest even when the party, or the presiding court, does not specifically raise the issue. Wilson v. Smith (1993), 85 Ohio App.3d 78,81. However, "[o]nly where a money judgment, definite in amount, is rendered will interest be included thereon by operation of law pursuant to R.C. 1343.03." City of North Olmstead v. Eliza Jennings, Inc. (1995),101 Ohio App.3d 652, 656, citing Shear v. West American Ins. Co. (1984),11 Ohio St.3d 162.
 {¶ 56} The trial court's January 10, 2001 judgment entry merely instructed the board to "reinstate [appellant] to his position as associate superintendent * * * and to pay him the salary he lost on the unexpired term of his contract from the date of his termination." Though the amount of appellant's "salary" was readily ascertainable, as he suggests in his argument, the amount "lost on the unexpired term of his contract," quite clearly, was not. Instead, the parties continued to dispute the amount of money due and payable through yet another year of litigation. The trial court was unable to render judgment on a definite amount until its July 23, 2002 judgment entry, wherein appellant was found entitled to damages in the amount of $54,866.68. Therefore, we hold that appellant is entitled to post-judgment interest, but only from the date of the trial court's July 23, 2002 judgment entry. Accordingly, appellant's seventh assignment of error is overruled.
 {¶ 57} For the foregoing reasons, we overrule appellant's seven assignments of error, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and KLATT, JJ., concur.