[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 37.]

THE STATE EX REL. KABERT ET AL. *v*. SHAKER HEIGHTS CITY SCHOOL
DISTRICT BOARD OF EDUCATION.

[Cite as *State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn.*,
1997-Ohio-242.]

*Mandamus compelling board of education to pay relators the difference between the amounts they were paid as tutors and the amounts they were entitled to receive under the teachers' salary schedules for school years 1989-1990 through 1994-1995, postjudgment interest, and additional mandatory contributions on their behalf to the State Teachers Retirement System—Writ granted, when.*

(No. 95-1841--Submitted January 7, 1997--Decided March 19, 1997.)

IN MANDAMUS.

———————————

{¶ 1} Relators are eleven tutors employed by respondent, Shaker Heights City School District Board of Education. They held teaching certificates and served as "teachers" as defined by R.C. 3317.13(A)(2). Relators performed individual and small-group tutorial instruction of students at various times from the 1989-1990 school year to the present.

{¶ 2} In a collective bargaining agreement effective from August 1981 to December 1985, the board recognized the Shaker Heights Teachers' Association as the exclusive representative of "classroom teachers" in the school district. At the time of this collective bargaining agreement, neither the board nor the association believed that tutors were included in the bargaining unit of "classroom teachers." In subsequent collective bargaining agreements effective from 1986 through 1997 between the board and the association, the bargaining unit represented by the association expressly excluded tutors. No tutor employed by the

board was an association member or paid association dues. When one of relators asked whether she could join the association, she was advised by an association representative that the association did not represent tutors. Another relator was informed by an association representative that the association could not assist her in a matter because she was not a member of the bargaining unit.

{¶ 3} For the school years from 1989-1990 through 1994-1995, the board paid relators at an hourly rate. During the same school years, the board adopted teachers' salary schedules, which were incorporated in the collective bargaining agreements. The teachers' salary schedules contained increments based on training and years of service. None of the relators received the compensation designated on these teachers' salary schedules. During these school years, the board received funds distributed under R.C. Chapter 3317, the School Foundation Program. The board did not file its collectively bargained teachers' salary schedules for school years 1991-1992, 1992-1993, 1993-1994, and 1994-1995 with the Superintendent of Public Instruction.

{¶ 4} In April 1995, as a result of this court's decisions, the board adopted nonbargaining, nonadministrative certificated salary schedules for tutors which purported to cover their compensation from March 1989 through June 1995. In July and August 1995, the board paid relators additional amounts based on its calculations of what they were entitled to under these newly adopted salary schedules. The board also paid its mandatory employer's contributions for relators to the State Teachers Retirement System based on the additional pay. R.C. 3307.53.

{¶ 5} In October 1995, the superintendent of the school district requested that the association bargain on behalf of tutors employed by the board. After the association refused, the board filed an unfair-labor-practice charge against the association with the State Employment Relations Board ("SERB"). SERB

subsequently dismissed the charge because tutors were not members of the bargaining unit represented by the association.

{¶ 6} In September 1995, relators filed in this court a petition for a writ of mandamus compelling the board to pay them the difference between their actual pay as tutors and the teachers' salary schedules set forth in the collective bargaining agreements. In December 1995, this cause was removed to the Court of Claims pursuant to R.C. 2743.03(E)(2) after the board filed an answer and a third-party complaint against the State Department of Education and certain state education officials. 74 Ohio St.3d 1476, 657 N.E.2d 784. In April 1996, the Court of Claims remanded the cause to this court based on its lack of jurisdiction to issue writs of mandamus. R.C. 2731.02; R.C. 2743.03. We subsequently dismissed respondent's third-party complaint and granted an alternative writ on relators' complaint. 75 Ohio St.3d 1510, 665 N.E.2d 679.

{¶ 7} The cause is now before this court on the submitted evidence and briefs.

————————————

*Gold, Rotatori & Schwartz*, *Niki Z. Schwartz* and *Susan L. Gragel*; *Ulmer & Berne*, *Thomas H. Barnard* and *John A. Hnat*, for relators.

*Squire, Sanders, & Dempsey*, *David J. Millstone* and *Loren L. Braverman*, for respondent.

————————————

***Per Curiam.***

Mandamus; Tutor Compensation

{¶ 8} Relators assert in their various propositions of law that they are entitled to back pay for school years 1989-1990 through 1994-1995 equal to the differences between the amounts they were paid by the board and the amounts paid by the board to teachers other than tutors under the collectively bargained teachers' salary schedules for those years. They also request postjudgment interest and

additional contributions on behalf of relators to the State Teachers Retirement System.

{¶ 9} In order to be entitled to a writ of mandamus, relators must establish (1) a clear legal right to the requested back pay and related benefits, (2) a corresponding clear legal duty on the part of the board to grant their request for back pay and associated benefits, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Burch v. Sheffield-Sheffield Lake City School Dist. Bd. of Edn.* (1996), 75 Ohio St.3d 216, 217, 661 N.E.2d 1086, 1088.

{¶ 10} It is well settled that a claim by public employees for wages or benefits is actionable in mandamus. *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 34, 641 N.E.2d 188, 196; *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.* (1989), 42 Ohio St.3d 86, 88, 537 N.E.2d 646, 647. Relators are public employees who claim wages pursuant to R.C. 3317.14 and related benefits under R.C. 1343.03(A) and 3307.53. As tutors employed by the board who provided instruction to students and possessed the appropriate certification, relators were teachers during the pertinent period for purposes of the statutes regarding teachers' salaries, R.C. 3317.13 and 3317.14. *Chavis, supra*, 71 Ohio St.3d at 30, 641 N.E.2d at 193; R.C. 3317.13(A)(2); see, also, *State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn.* (1991), 62 Ohio St.3d 88, 578 N.E.2d 464; *State ex rel. Brown v. Milton-Union Exempted Village Bd. of Edn.* (1988), 40 Ohio St.3d 21, 531 N.E.2d 1297. In *Chavis, Tavenner,* and *Brown*, we issued writs of mandamus to compel boards of education to pay back pay to tutors based on what they should have been paid in accordance with the teachers' salary schedules adopted under R.C. 3317.14.

{¶ 11} The board contends that relators are not entitled to the requested back pay because (1) it retroactively adopted tutor salary schedules in 1995 for the pertinent school years and paid relators additional amounts thereunder, (2) the collectively bargained teachers' salary schedules for school years 1991-1992

through 1994-1995 were never filed with the Superintendent of Public Instruction or the Department of Education, and (3) relators did not use the grievance and arbitration procedure contained in the collective bargaining agreements.

Teachers' Salary Schedules; Retroactive Application

{¶ 12} R.C. 3317.14 provides:

"*Any school district board of education \*\*\* participating in funds distributed under Chapter 3317. of the Revised Code shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service.* \*\*\* [T]he board may establish its own service requirements \*\*\*, provided no teacher receives less than the amount required to be paid pursuant to section 3317.13 of the Revised Code \*\*\*.

"*On the fifteenth day of October of each year the salary schedule in effect on that date in each school district \*\*\* shall be filed with the superintendent of public instruction.* A copy of such schedule shall also annually be filed by the board of education of each local school district with the educational service center superintendent, who thereupon shall certify to the treasurer of such local district the correct salary to be paid to each teacher in accordance with the adopted schedule." (Emphasis added.)

{¶ 13} In construing a statute, the court's paramount concern is legislative intent. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463, 465. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319, 1323.

{¶ 14} Pursuant to R.C. 3317.14, since the board received funds distributed under R.C. Chapter 3317, the School Foundation Program, it possessed duties to annually adopt a teachers' salary schedule with provision for increments based upon training and years of service and to file the annual salary schedule in effect on October 15 each year. The plain language of R.C. 3317.14 does not permit

boards of education to retroactively adopt salary schedules for previous school years.

{¶ 15} The board contends that its April 1995 tutor salary schedules adopted retroactive to March 1989 were corrections permitted by R.C. 3317.13(B), which states:

"Upon written complaint to the superintendent of public instruction that the board of education of a district * * * has failed or refused to annually adopt a salary schedule or to pay salaries in accordance with the salary schedule set forth in division (C) of this section, the superintendent of public instruction shall cause to be made an immediate investigation of such complaint. If the superintendent finds that the conditions complained of exist, he shall order the board to correct such conditions within ten days from the date of the finding. ***"

{¶ 16} R.C. 3317.13(B) is inapplicable. There is no evidence of any written complaint to the Superintendent of Public Instruction. In addition, R.C. 3317.13(B) provides only for an investigation of a board of education's (1) failure or refusal to adopt an annual teachers' salary schedule or (2) failure to pay salaries in accordance with the state minimum teachers' salary schedule. *Chavis, supra*, 71 Ohio St.3d at 34, 641 N.E.2d at 195. In contrast, relators' claim is based on the board's failure to pay them in accordance with the teachers' salary schedules adopted and incorporated in the collective bargaining agreements for the pertinent school years.

{¶ 17} As the Court of Appeals for Cuyahoga County recently held in a case involving other tutors seeking similar relief against the board, the "statutory mandate to adopt and file salary schedules annually affirms that the right to be so paid accrues annually, and this may not be retroactively corrected." *State ex rel. Cohn v. Shaker Hts. City School Dist. Bd. of Edn.* (July 1, 1996), Cuyahoga App. No. 69539, unreported, 1996 WL 370586, appeal pending in case No. 96-1787. A contrary holding would permit boards of education to deprive tutors of their right to collect the full wages to which they are entitled under R.C. 3317.14, *Chavis,*

6

*Tavenner,* and *Brown*, by after-the-fact adoptions of salary schedules not authorized by the controlling statutes. Therefore, the board's April 1995 adoption of the retroactive tutor salary schedules does not prevent relators' entitlement to be paid under the collectively bargained teachers' salary schedules for the school years at issue.

Teachers' Salary Schedules; Filing Requirement

{¶ 18} The board next contends that since the collectively bargained salary schedules for school years 1991-1992 through 1994-1995 were never filed with either the Superintendent of Public Instruction or the Department of Education, they do not constitute teachers' salary schedules for purposes of R.C. 3317.14. R.C. 3317.14 requires that the salary schedule in effect on October 15 of each school year "shall be filed with the superintendent of public instruction." In *Chavis, supra*, 71 Ohio St.3d at 32-33, 641 N.E.2d at 194-195, we held that teachers' salary schedules contained in collective bargaining agreements were filed and adopted in substantial compliance with R.C. 3317.14 where they were the only adopted schedules containing provisions for "increments based upon training and years of service" as required by R.C. 3317.14, and they were filed with the Department of Education instead of the Superintendent of Public Instruction.

{¶ 19} As in *Chavis*, the collectively bargained teachers' salary schedules here were the only ones adopted by the board during the pertinent school years that provided for increments based on training and years of service. In addition, as in *Chavis*, there is no evidence that these schedules were filed with the Superintendent of Public Instruction. Nevertheless, the board asserts that *Chavis* is distinguishable because the schedules in that case were filed with the Department of Education.

{¶ 20} The board's argument is without merit. The board manifestly adopted the schedules in compliance with R.C. 3317.14. There is no indication in the collective bargaining agreements covering the subject school years that the board and association intended to adopt teachers' salary schedules that conflicted

with R.C. 3317.13 and 3317.14. Cf. *Burch, supra*, 75 Ohio St.3d at 219, 661 N.E.2d at 1089 ("[T]eachers' salary schedules under R.C. 3317.13 and 3317.14 do not constitute 'minimum educational requirements' which are excepted from R.C. 4117.10(A)'s rule that the collective bargaining agreement prevails over conflicting laws."). The fact that the board neglected to file the schedules for certain of the school years did not prevent nontutor teachers from being paid pursuant to the schedules. Tutors, who are teachers for purposes of R.C. 3317.13 and 3317.14, have a similar right to be paid under these schedules. In this regard, R.C. 3317.14 does not condition payment under teachers' salary schedules adopted by the board on the act of filing.

{¶ 21} The board should not be allowed to benefit from its own failure to comply with its statutory duty under R.C. 3317.14 to timely file the schedules adopted under that statute. See *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 906 ("We must *** construe statutes to avoid unreasonable or absurd results."); *Brown, supra*, 40 Ohio St.3d at 27, 531 N.E.2d at 1303; R.C. 1.47(C).

{¶ 22} Based on the foregoing, the teachers' salary schedules were adopted pursuant to and in substantial compliance with R.C. 3317.14. Relators possess a statutory right to be paid in accordance with those schedules for the school years 1989-1990 through 1994-1995. *Chavis, supra*, 71 Ohio St.3d at 33, 641 N.E.2d at 195; *Cohn, supra* ("Relators had the statutory right to be paid pursuant to salary schedules which should have been adopted and filed annually. When the board did not adopt a salary schedule for tutors, their right to be paid emanated from the then existing salary schedules, not those adopted retroactively. The then current salary schedule embodied in the collective bargaining agreement was the schedule by which the Board was paying its teachers, and the schedule under which the tutors had the right to be paid.").

**{¶ 23}** Relators thus have a clear legal right to the difference between the amounts they were paid as tutors and the amounts they should have been paid under the board's duly adopted teachers' salary schedules. The board has a corresponding clear legal duty to make these payments.

Adequate Legal Remedy

**{¶ 24}** The board asserts that relators are not entitled to the requested mandamus relief because they had an adequate remedy at law via the grievance and arbitration procedure contained in the collective bargaining agreements for the pertinent school years. If relators were members of the collective bargaining unit for school years 1989-1990 through 1994-1995, they possessed an adequate remedy at law by the grievance and arbitration provisions to pursue their claims to be paid pursuant to the teachers' salary schedules incorporated in the agreements. *Burch, supra*, 75 Ohio St.3d at 220, 661 N.E.2d at 1089-1090; *State ex rel. Johnson v. Cleveland Hts./Univ. Hts. School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 189, 192-193, 652 N.E.2d 750, 752-753.

**{¶ 25}** In order to be members of the collective bargaining unit, relators had to be part of the deemed certified bargaining unit because the agreements effective for school years 1989-1990 through 1994-1995 expressly excluded tutors. A deemed certified collective bargaining unit is the historical unit in which the employee representative bargained with the employer on behalf of public employees in a collective bargaining relationship that predated the April 1, 1984 effective date of R.C. Chapter 4117, the Ohio Collective Bargaining Act. Section 4(A) of Am.Sub.SB. No. 133, 140 Ohio Laws, Part I, 336, 337; *State ex rel. Alben v. State Emp. Relations Bd.* (1996), 76 Ohio St.3d 133, 136, 666 N.E.2d 1119, 1123. Adjustments or alterations to deemed certified bargaining units are generally not permitted until challenged by another employee organization. *Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO v. Cincinnati* (1994), 69 Ohio St.3d 677, 635 N.E.2d 361, syllabus; cf. *State ex rel. Brecksville Edn. Assn. v. State Emp.*

*Relations Bd.* (1996), 74 Ohio St.3d 665, 660 N.E.2d 1199, syllabus ("Section 4[A] of Am.Sub.S.B. No. 133 does not deprive the State Employment Relations Board of jurisdiction to consider a petition jointly filed by an employer and an exclusive bargaining representative requesting SERB to amend the composition of a deemed certified bargaining unit.").

**{¶ 26}** The board claims that relators were part of the deemed certified bargaining unit because the deemed certified bargaining unit consisted of "classroom teachers," which included tutors. In support of this claim, the board relies on our holdings that tutors are teachers for purposes of statutes relating to teachers' salary schedules and teaching contracts and conditions of employment. *Chavis, Tavenner,* and *Brown, supra*; R.C. 3319.09(A); R.C. 3317.13(A)(2). But the phrase "classroom teachers" as used by the board and the association in collective bargaining involves neither R.C. 3319.09(A) nor 3317.13(A)(2). Therefore, *Chavis, Tavenner*, and *Brown* are inapposite.

**{¶ 27}** Instead, we must discern the meaning of "classroom teachers" in the context of the collective bargaining agreement. A collective bargaining agreement is a contract, and "[t]he overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties." *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 276, 638 N.E.2d 572, 576. Here, the evidence is uncontroverted that the board and association did not intend the phrase "classroom teachers" to include tutors. Further, assuming the phrase is broad enough to unambiguously include tutors in the bargaining unit, the board and association's agreement is subject to reformation. See, *e.g., Justarr Corp. v. Buckeye Union Ins. Co.* (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345, 1346 ("A mistake in reducing an agreement to writing is subject to reformation if the resulting written contract fails to reflect the agreement of the parties.").

**{¶ 28}** In addition, R.C. Chapter 4117 "shall be construed liberally for the accomplishment of the purpose of promoting orderly and constructive relationships

between all public employers and their employees." R.C. 4117.22; *Brecksville, supra*, 74 Ohio St.3d at 668, 660 N.E.2d at 1202. This purpose is not furthered by expanding the composition of a collective bargaining unit beyond that intended by the parties to the agreement to include individuals who are not members of the association that is a party to the agreement. *Cohn, supra* ("[A]fter reviewing R.C. Chapter 4117, this court declines to retroactively force these litigants into a bargaining unit, especially when all parties agree that at the time, they were not part of a labor union."). In addition, the board and association continued to act as if tutors were not included by not permitting relators to become members of the association and using language purporting to exclude relators from the bargaining unit in the collective bargaining agreements for the school years at issue.

{¶ 29} Based on the foregoing, the grievance and arbitration procedure contained in the collective bargaining agreements did not constitute an adequate remedy at law. Relators, and other tutors, were not collective bargaining unit members. Cf. *Alben, supra*, 76 Ohio St.3d at 136-137, 666 N.E.2d at 1123-1124, where relators failed to introduce sufficient evidence to establish that they were not part of the deemed certified bargaining unit.

Back Pay

{¶ 30} Relators have established the prerequisites for a writ of mandamus to compel the board to pay them the difference between what they received as tutors and what they were entitled to under the applicable teachers' salary schedules for school years 1989-1990 through 1994-1995. The parties essentially agree on the amounts of back pay involved. The amounts due each of the relators in back pay, rounded to the nearest dollar, are as follows:

| | |
|---|---|
| Audrey Coleman | $26,736 |
| Marilyn Frank | $89,715 |
| Patricia Frew | $25,356 |
| Terry Goulder | $32,801 |

| | |
|---|---|
| Nancy Levitan | $28,101 |
| Patricia Schey | $73,349 |
| Lori Dreskin | $14,135 |
| Shelley Kabert | $16,162 |
| Susan Karp | $10,526 |
| Barbara Leeson | $3,080 |
| Lori Ross | $4,023 |

Postjudgment Interest; Retirement Contributions

{¶ 31} Relators request postjudgment interest on the award of back pay. Relators are entitled to postjudgment interest under R.C. 1343.03(A). *Tavenner, supra*, 62 Ohio St.3d at 90-91, 578 N.E.2d at 466. The parties agree that relators are also entitled to additional mandatory contributions by the board on their behalf to the State Teachers Retirement System based on the back pay awarded. R.C. 3307.53.

Conclusion

{¶ 32} For the foregoing reasons, we grant a writ of mandamus compelling the board to pay relators the difference between the amounts they were paid as tutors and the amounts they were entitled to receive under the teachers' salary schedules for school years 1989-1990 through 1994-1995, postjudgment interest, and additional mandatory contributions on their behalf to the State Teachers Retirement System.

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————