ZUPP et al., Appellants,

v.

COLUMBUS MUNICIPAL CIVIL SERVICE COMMISSION, Appellee.

Smalls et al., Appellants,

v.

Columbus Municipal Civil Service Commission, Appellee.

[Cite as *Zupp v. Mun. Civ. Serv. Comm.*, 187 Ohio App.3d 614, 2010-Ohio-2614.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 09AP–895 and 09AP–897.

Decided June 10, 2010.

Thompson Hine L.L.P., William C. Moul, and Samir B. Dahman, for appellants.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Alan P. Varhus, Assistant City Attorney, for appellee.

PEGGY BRYANT, Judge.

{¶ 1} Appellants, John Zupp and Cynthia Smalls, appeal from a judgment of the Franklin County Court of Common Pleas affirming a decision of the Municipal Civil Service Commission for the City of Columbus that denied appellants the opportunity to avoid layoff from their classified civil service positions with the city by displacing, or "bumping," less senior city employees. Because appellants have enforceable "bumping" rights pursuant to a commission rule governing layoffs, we reverse the common pleas court's judgment.

## I. Procedural History

{¶ 2} The facts are undisputed in this case. Appellants are members of a collective bargaining unit that the Columbus Municipal Association of Government Employees, Communications Workers of America, Local 4502 ("CMAGE") represents. CMAGE entered into a collective bargaining agreement with the city pursuant to R.C. Chapter 4117. Article 22 of the CMAGE contract sets forth the agreement of the city and CMAGE on the subject of "Layoffs," stating in full: "The Civil Service Commission is responsible for the establishment and enforcement of the rules governing layoffs. Both the City and the Union agree to strictly adhere to the Rules in effect on August 24, 2005."

{¶ 3} Municipal Civil Service Commission Rule XII(C), as the commission adopted and published it on August 24, 2005, provides that in the event of layoffs, seniority will determine who is to be laid off in a job classification that is being reduced. More specifically, the rule provides that a classified employee who is being removed from his or her position pursuant to a layoff is entitled to avoid

layoff by "bumping" a less senior employee holding a position in the same or a lower class series or job family as the more senior employee. Rule XII(C)(3).

{¶ 4} In 2008, appellants held full-time classified civil service positions with the city, but the city notified them that they were to be laid off. To avoid layoff, appellants sought to bump less senior employees holding lower-paid positions in their respective class series, but the only employees subject to appellants' bumping were members of a collective bargaining unit that the American Federation of State, County, and Municipal Employees ("AFSCME") represented. The city determined that the provisions of AFSCME's collective bargaining agreement with the city prohibited appellants from "bumping" the less senior AFSCME employees. The executive director of the commission formalized the decision in a "Layoff Certification List" issued on August 29, 2008, that certified appellants for layoff.

{¶ 5} Appellants appealed the executive director's decision to the commission. Following an evidentiary hearing on the matter, the commission denied appellants' appeal. In its decision, the commission acknowledged that at the time of appellants' layoff, appellants had more seniority than employees holding positions in a lower class series than appellants. The commission further recognized that it had adopted rules that, on their face, would afford appellants the opportunity to bump the employees with less seniority in order to avoid layoff. The commission nonetheless determined that Article 15 of the city's collective bargaining agreement with AFSCME modified the city's Rule XII(C)(3) by providing that "[n]on-bargaining unit employees shall have no bumping rights into an AFSCME bargaining unit classification." Applying that provision, the commission concluded the following: (1) appellants had no "bumping opportunity" in their situation because the only employees subject to being "bumped" were members of the AFSCME bargaining unit, and (2) the commission rules, as the AFSCME contract provision modified them, prevented appellants from displacing the AFSCME classified employees.

{¶ 6} Pursuant to R.C. 2506.01, appellants appealed the commission's decision to the common pleas court. The common pleas court agreed with the commission's determination that Article 15 of the AFSCME collective bargaining agreement prevailed over and modified the commission's promulgated rule governing employee "bumping rights" as they relate to layoffs. The court concluded that the change to the commission's rule "was not a change that necessitated publishing as would be required in the course of a normal amendment to a rule" but, rather, was "self-effectuating" under R.C. 4117.10(A) when the city entered into the collective bargaining agreement with AFSCME.

{¶ 7} The common pleas court similarly rejected appellants' alternative argument that appellants are "bargaining unit employees and therefore fall within

those who may bump under the AFSCME contract." The court concluded that "[w]hile Appellants are obviously employees covered by a bargaining agreement, they are not within the literal or contemplated coverage of the AFSCME agreements."

{¶ 8} The court accordingly denied appellants' appeal and journalized its decision in a September 2, 2009 judgment entry.

## II. Assignments of Error

{¶ 9} Appellants assign four errors on appeal:

*Assignment of Error 1:*

The Common Pleas Court erred in holding in its Decision that a municipal civil service commission rule, which is incorporated into a collective bargaining agreement between the municipal employer and labor organization A, and which protects the municipal employees covered by that collective bargaining agreement from layoff by the municipal employer, can be amended or preempted by a collective bargaining agreement between that same municipal employer and labor organization B, the latter being a labor organization which does not represent the municipal employees protected from layoff on the face of the subject civil service commission rule.

*Assignment of Error 2:*

The Common Pleas Court erred in concluding in its Decision that Article 15 of the collective bargaining agreement between AFSCME and the City of Columbus was intended or can be interpreted as amending Appellee's Rules, so as to preclude Appellants from exercising bumping rights to avoid layoff.

*Assignment of Error 3:*

The Court of Common Pleas erred in its Decision by finding (assuming) that the collective bargaining agreement provision (Article 15 of the collective bargaining agreement between AFSCME and the City of Columbus), upon which Appellee relies as having amended its rules, was bargained before Appellants obtained "bargaining status," before Appellants' exclusive representative (CMAGE/CWA) was certified by the State Employment Relations Board, and before CMAGE enjoyed a collective bargaining relationship with the City of Columbus.

*Assignment of Error 4:*

The Common Pleas Court erred in its Decision by relying upon its erroneous finding, as set forth in Assignment of Error 3, above, to support its legal conclusion that the Civil Service Commission Rule and contract provision upon which Appellants rely was amended or preempted by the collective bargaining agreement between AFSCME and the City of Columbus.

### III. Subject-Matter Jurisdiction of Common Pleas Court

{¶ 10} Preliminarily, we address the commission's claim, raised for the first time on appeal, that the common pleas court lacked subject-matter jurisdiction under R.C. 2506.01 to hear appellants' appeal.

{¶ 11} Subject-matter jurisdiction addresses the power of the court to adjudicate the merits of a case and is a necessary predicate for a court to hear and decide a case upon the merits. See, e.g., *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11; *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. Subject-matter jurisdiction cannot be waived and may be challenged at any time. Civ.R. 12(H)(3); *Pratts; State ex rel. Bond v. Velotta Co.* (2001), 91 Ohio St.3d 418, 419, 746 N.E.2d 1071.

{¶ 12} R.C. 2506.01 grants authority to the common pleas court to review final decisions of administrative officers and agencies, such as a municipal civil service commission. See, e.g., *Nuspl v. Akron* (1991), 61 Ohio St.3d 511, 575 N.E.2d 447; *Haught v. Dayton* (1973), 34 Ohio St.2d 32, 63 O.O.2d 49, 295 N.E.2d 404; *Royster v. Circleville Civ. Serv. Comm.* (Apr. 5, 1996), 4th Dist. No. 95CA19, 1996 WL 174995. In order for a final decision of an administrative agency to be appealable under R.C. 2506.01, the agency's decision must be the product of "quasi-judicial proceedings." Section 4(B), Article IV, Ohio Constitution; *M.J. Kelley Co. v. Cleveland* (1972), 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562, paragraph one of the syllabus; *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 51 O.O.2d 35, 257 N.E.2d 371, paragraph one of the syllabus. An administrative proceeding is not "quasi-judicial" unless it involves an exercise of discretion and includes a "requirement for notice, hearing and the opportunity for introduction of evidence." *M.J. Kelley Co.* at 150, 61 O.O.2d 394, 290 N.E.2d 562; *State ex rel. Scherach v. Lorain Cty. Bd. of Elections*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647, ¶ 15; *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 16; *State ex rel. Wright v. Ohio Bur. of Motor Vehicles* (1999), 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (all determining that proceedings of administrative officers and agencies are not quasi-judicial unless the proceeding is required to resemble a judicial trial).

{¶ 13} Although the commission agrees that the evidentiary hearing held in this case on October 9, 2009, involved an exercise of its discretion and actually resembled a trial, the commission nonetheless contends that the hearing was not a quasi-judicial proceeding because no statute or other pertinent law required the commission to conduct such a proceeding in this matter. Accordingly, in resolving the issue of subject-matter jurisdiction, we must determine whether the commission was required under law to provide appellants with the hearing held

before the commission. See *Scherach* at ¶ 23; *In re Appeal of Howard* (1991), 73 Ohio App.3d 717, 719, 598 N.E.2d 165.

{¶ 14} The Columbus City Charter commands the commission to "prescribe, amend and enforce rules for the classified service," including rules that provide for employees in the classified service who are discharged or reduced in rank or compensation to receive notice of the reasons for the employment action and to have an opportunity to be heard at a hearing before the commission. Columbus City Charter, Sections 149 and 149-1. A "layoff" by definition is a temporary or permanent termination of a person's employment. Black's Law Dictionary (9th Ed.2009). Because it typically involves at least a temporary reduction in the employee's rank or compensation, classified employees "who are discharged or reduced in rank or compensation" include classified employees who are subject to layoff.

{¶ 15} Pursuant to the city charter, the municipal civil service commission promulgated Rule XIII, which provides that classified employees who are subject to a discharge or reduction in rank, position, or compensation may appeal such action or decision to the commission. Rule XIV, in turn, prescribes that when a classified employee files such an appeal, the commission shall (1) notify the parties in writing of the time, date, place, and forum of a hearing on the appeal, (2) conduct an evidentiary hearing at which the parties have a right to appear, examine witnesses, and present evidence, and (3) issue a decision affirming, disaffirming, or modifying the action or decision the employee appealed.

{¶ 16} Because the commission's rules, promulgated pursuant to the city charter, required the commission to provide "notice, hearing and the opportunity for introduction of evidence" upon appellants' appeal to the commission, the proceedings the commission conducted in this matter are "quasi-judicial proceedings." *M.J. Kelley Co.*, 32 Ohio St.2d 150, 61 O.O.2d 394, 290 N.E.2d 562. See also *Nuspl*, 61 Ohio St.3d at 516, 575 N.E.2d 447 (determining that civil service rule affording an "appellant an opportunity to be heard in his own behalf" is of the "quasi-judicial" nature contemplated in *M.J. Kelley Co.*); *Haught*, 34 Ohio St.2d 32, 63 O.O.2d 49, 295 N.E.2d 404 (concluding employees had right to appeal under R.C. 2506.01 because proceeding outlined in city charter to contest their "allegedly wrongful layoffs" was quasi-judicial).

{¶ 17} The commission's final decision in this matter, determining that appellants are not entitled to exercise "bumping rights" to avoid layoff, was a product of quasi-judicial proceedings. The common pleas court thus had subject-matter jurisdiction to review the commission's decision pursuant to R.C. 2506.01.

## IV. Standard of Review

{¶ 18} In the appeal under R.C. 2506.01 from the commission's decision involving largely undisputed facts, the court of common pleas did not need to

apply the language of R.C. 2506.04 that requires the court to assess whether the evidence is reliable, substantial, and probative. Instead, because the facts are undisputed, the court was required to determine whether the commission's decision is, among other things, unconstitutional, arbitrary, capricious, unreasonable, or "illegal," meaning contrary to law. R.C. 2506.04; see *Deemer v. Ashtabula City Civ. Serv. Comm.* (1997), 124 Ohio App.3d 630, 636, 707 N.E.2d 20. Following its review, the court was authorized to reverse, vacate, or modify the commission's decision, remand the cause to the commission with instructions to enter a decision consistent with the court's determination, or, as here, affirm the commission's decision. R.C. 2506.04. The common pleas court's judgment may be appealed to the appellate court on questions of law. R.C. 2506.04. This court will affirm the judgment of the common pleas court unless we conclude that, in view of the largely undisputed facts, the common pleas court's judgment is contrary to law. R.C. 2506.04. See *Cincinnati Bengals, Inc. v. Papania* (1993), 92 Ohio App.3d 785, 787, 637 N.E.2d 330.

## V. Second Assignment of Error

{¶ 19} To facilitate our analysis, we first address appellants' second assignment of error. Appellants assert that, even if the common pleas court correctly determined that Article 15 of the AFSCME collective bargaining agreement modified Rule XII(C)(3) on "bumping," appellants are, contrary to the common pleas court's determination, "bargaining unit employees" within the scope of coverage of Article 15 of the AFSCME collective bargaining agreement. Appellants thus contend that Article 15 of that contract, which prohibits "*non-* bargaining unit employees" from exercising "bumping rights into an AFSCME bargaining unit classification," does not apply to appellants. Appellants' argument is grounded in their observation that they are members of the CMAGE bargaining unit, so they are not "non-bargaining unit employees."

{¶ 20} To discern the meaning of the phrase "non-bargaining unit employees" in Article 15 of the AFSCME collective bargaining agreement, we examine the agreement itself. "A collective bargaining agreement is a contract, and '[t]he overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties.'" *State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn.* (1997), 78 Ohio St.3d 37, 44, 676 N.E.2d 101, quoting *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 276, 638 N.E.2d 572. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus, following and approving *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. When the terms of a

contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus.

{¶ 21} The AFSCME collective bargaining agreement does not define the phrase "non-bargaining unit employees" but does define its discrete terms, "employee" and "bargaining unit." Article 2 of the AFSCME contract defines "employee" to mean "any member holding a bargaining unit classification." Appellants arguably fall within the AFSCME definition of "employees" because, at the time of their layoffs, appellants held bargaining-unit classifications, albeit as members of the CMAGE bargaining unit.

{¶ 22} The term "bargaining unit" is defined in Section 4.2 of the AFSCME contract to mean "that group of City of Columbus employees meeting the definition of a public employee pursuant to Section 4117.01 of the Ohio Revised Code, [and] serving in class titles included in Appendix A attached" to the AFSCME agreement. "Bargaining unit" thus refers to city employees holding positions in job classifications that the AFSCME bargaining unit represents. Here, appellants undisputedly are city of Columbus "public employees" pursuant to R.C. 4117.01. They, however, do not satisfy the definition of "bargaining unit" in the AFSCME agreement because, at the time of their layoff, appellants held positions in job classifications that the CMAGE bargaining unit, not the AFSCME bargaining unit, represented.

{¶ 23} R.C. Chapter 4117, the Ohio Collective Bargaining Act, is to "be construed liberally for the accomplishment of the purpose of promoting orderly and constructive relationships between all public employers and their employees." R.C. 4117.22; *Kabert*, 78 Ohio St.3d at 44, 676 N.E.2d 101. Its "purpose is not furthered by expanding the composition of a collective bargaining unit beyond that intended by the parties to the agreement to include individuals who are not members of the association that is a party to the agreement." Id. Under the circumstances of this case, to construe the phrase "bargaining unit employees" in the AFSCME collective bargaining agreement to include appellants, who are not members of the union that is a party to the agreement, does not further the purpose of R.C. Chapter 4117.

{¶ 24} In sum, because appellants are not members of, and did not hold positions in job classifications represented by, the AFSCME bargaining unit at the time of their layoff, the trial court did not err in determining that appellants are not "bargaining unit employees" within the "literal or contemplated coverage of the AFSCME agreement." Appellants' second assignment of error is over-ruled.

## VI. Remaining Assignments of Error

■ {¶ 25} In their remaining, interrelated assignments of error, appellants claim that the commission and common pleas court erred in determining that Article 15 of the AFSCME contract, which protects employees in the AFSCME bargaining unit from being bumped by senior "non-bargaining unit employees," prevails over and "modifies" the conflicting commission Rule XII(C)(3), in effect on August 24, 2005, that governs employee "bumping rights" in layoffs. Specifically, appellants contend that the commission and common pleas court erred by (1) concluding that the negotiated agreement of the city and AFSCME on the matter of employee "bumping rights" automatically "modified" the commission's properly promulgated Rule XII(C)(3) through a "self-effectuating change" pursuant to R.C. 4117.10(A), even though the city failed to publish the amendment to the rule, and by (2) applying the "modified" commission rule to members of the CMAGE bargaining unit, who do not fall within the "public employment covered by the [AFSCME] agreement," as required under the express terms of R.C. 4117.10(A).

■ {¶ 26} The Columbus City Charter governs the city of Columbus, a home-rule city. Section 149 of the Columbus City Charter requires the city's civil service commission to "prescribe, amend, and enforce rules for the classified service" and further requires that the rules that the commission promulgates provide "for the publication of the rules and amendments thereto in the City Bulletin." Except as otherwise provided by law, clear provisions of a city charter cannot be bypassed or abrogated. *Marshall v. Columbus Mun. Civ. Serv. Comm.* (1978), 56 Ohio App.2d 289, 10 O.O.3d 292, 382 N.E.2d 1167. See also *State ex rel. Elchlinger v. Ramser* (1961), 113 Ohio App. 289, 17 O.O.2d 275, 172 N.E.2d 731. Accordingly, civil service rules of a city must comport with the city's charter. *IAFF v. Dayton Civ. Serv. Bd.*, 107 Ohio St.3d 10, 2005-Ohio-5826, 836 N.E.2d 544, ¶ 15, citing *Reed v. Youngstown* (1962), 173 Ohio St. 265, 19 O.O.2d 119, 181 N.E.2d 700, paragraph two of the syllabus; *N. Ohio Patrolmen's Benevolent Assn. v. N. Olmsted* (1984), 16 Ohio App.3d 464, 16 OBR 546, 476 N.E.2d 689.

{¶ 27} In accordance with the Columbus City Charter, the commission adopted rules and regulations pertaining to the adoption, amendment, rescission, and publication of commission rules. See Municipal Civil Service Commission Rule XXI(A) (providing that the commission shall have the power to adopt, amend, or rescind rules, or any part thereof, by a majority vote of the commission). Rule XXI(B), entitled "Publication," provides that "no rule or amendment thereto passed by the Commission shall go into effect until it has been published in the City Bulletin subsequent to passage."

{¶ 28} In this case, the city agreed in the CMAGE contract to "strictly adhere to the Rules governing layoffs that were 'in effect on August 24, 2005' "; Rule XII(C)(3), promulgated and in effect on that date, provided that classified employees with more seniority may avoid layoff by "bumping" classified employees with less seniority in the same or a lower job classification as the more senior employee. Rule XII(C)(3), as published on August 24, 2005, and incorporated by reference into the CMAGE contract, conflicts with the provision in the AFSCME contract on the same subject matter, as the city provided in the AFSCME contract that a more senior classified employee who is not in the AFSCME bargaining unit cannot "bump" a classified employee in the AFSCME bargaining unit. The undisputed facts reveal that the commission did not amend the bumping provisions of Rule XII(C)(3). Nor did it publish an amendment to the rule in the City Bulletin in an attempt to conform the rule to the AFSCME contract provision that protects AFSCME bargaining unit members from being "bumped" by non-AFSCME bargaining unit members with more seniority. Accordingly, Rule XII(C)(3), as the commission adopted and published it on August 24, 2005, is still valid and enforceable unless the rule has otherwise been amended by operation of law.

{¶ 29} The commission contends that the common pleas court correctly determined that R.C. 4117.10(A) amended Rule XII(C)(3) by operation of law to conform to the AFSCME collective bargaining agreement provision on "bumping" rights. R.C. 4117.10(A) states that "[a]n agreement between a public employer and an exclusive representative entered into pursuant to [R.C. Chapter 4117] governs the wages, hours, and terms and conditions of public employment covered by the agreement." If, however, "no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." Id. The statute further provides that R.C. Chapter 4117 "prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in this chapter or as otherwise specified by the general assembly." Id.

{¶ 30} The provisions of the CMAGE and AFSCME collective bargaining agreements on the matter of employee "bumping rights" in layoffs are "reduction-in-force" provisions, which pertain to "wages, hours, and terms and conditions of public employment" within the meaning of R.C. 4117.10(A) and therefore are appropriate subjects for collective bargaining. See *Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn.* (1991), 61 Ohio St.3d 193, 197, 574 N.E.2d 442. Well-established law reflects that, pursuant to R.C. 4117.10(A), the provisions of collective bargaining agreements entered into pursu-

ant to R.C. Chapter 4117, such as the city's collective bargaining agreements with CMAGE and AFSCME, generally prevail over conflicting laws, rules, and regulations of a chartered municipality, such as the city. See *DeVennish v. Columbus* (1991), 57 Ohio St.3d 163, 566 N.E.2d 668; *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL–CIO* (1991), 61 Ohio St.3d 658, 576 N.E.2d 745, paragraph one of the syllabus; *Ryther v. Gahanna*, 10th Dist. No. 04AP–1220, 2005-Ohio-2670, 2005 WL 1274212, ¶ 12. Those cases, however, concerned the binding effect of negotiated collective bargaining agreement provisions on the parties to the agreement; the cases did not address whether the negotiated provisions, rather than conflicting laws, were binding on third parties who did not enter into the collective bargaining agreement at issue.

{¶ 31} R.C. 4117.10(A) limits the scope and binding effect of collective bargaining agreements entered into pursuant to R.C. Chapter 4117, stating that an agreement between a public employer and an exclusive representative of a labor association, such as CMAGE or AFSCME, governs the "terms and conditions of *public employment covered by the agreement*." (Emphasis added.) R.C. 4117.10(C), in turn, provides that "[w]hen the matters about which there is agreement are reduced to writing and approved by the employee organization and the legislative body [of a municipality], *the agreement is binding upon* the legislative body, the employer, and *the employee organization and employees covered by the agreement*." (Emphasis added.) Giving effect to the plain language in R.C. 4117.10, emphasized here, we conclude that the legislature plainly expressed its intent to limit the scope and binding effect of a collective bargaining agreement to the parties who entered into and are covered by the agreement. Accordingly, when the statutory language in R.C. 4117.10 is applied to the facts in this case, the negotiated provision in AFSCME's collective bargaining agreement with the city on the subject of employee "bumping rights" prevails over the conflicting commission rule and is binding *only* as between the city and its employees who are members of the AFSCME bargaining unit, but not to members of the CMAGE bargaining unit who are not parties to that agreement.

{¶ 32} "[N]egotiated collective bargaining agreements are just as binding upon public employers as they are upon private employers. Courts should not allow public employers to disregard the terms of their collective bargaining agreements whenever they find it convenient to do so" and, instead, must "require public employers to honor their contractual obligations to their employees." (Citation omitted.) *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assoc.* (1986), 22 Ohio St.3d 80, 84, 22 OBR 95, 488 N.E.2d 872.

{¶ 33} Here, as members of the CMAGE bargaining unit, appellants availed themselves of the rights guaranteed under R.C. Chapter 4117 to bargain collectively, and Article 22 of the agreement they negotiated with the city requires the city to "strictly adhere to the [commission] Rules in effect on August 24, 2005." Pursuant to R.C. 4117.10(C), the commission rule governing "bumping rights," in effect on August 24, 2005, and incorporated by reference into the CMAGE collective bargaining agreement with the city, is binding as between the city and its employees who are members of the CMAGE bargaining unit. R.C. Chapter 4117 and principles of equity entitle CMAGE to the same protection and enforcement of its collective bargaining agreement with the city as is afforded to AFSCME.

{¶ 34} As appellants note in their brief before this court, the city "negotiated itself into this mess" by making mutually exclusive and inconsistent promises to AFSCME and CMAGE with respect to classified employee "bumping rights" in layoff situations, and "while that may be a problem for the City, it cannot be Appellants' problems." Appellants are entitled to enforce the terms and conditions of employment negotiated in CMAGE's collective bargaining agreement with the city on the matter of employee "bumping rights" in layoffs.

{¶ 35} In the final analysis, we conclude that the provision in Article 22 of the city's collective bargaining agreement with the CMAGE bargaining unit on the subject of employee "bumping rights" in layoffs, in which "[b]oth the City and the Union agree to strictly adhere to the [Civil Service Commission] Rules in effect on August 24, 2005," is valid and enforceable. Appellants' first, third, and fourth assignments of error are sustained.

## VII. Disposition

{¶ 36} Having overruled appellants' second assignment of error and sustained their remaining assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court with instructions to return it to the commission for further proceedings consistent with this court's decision.

*Judgments reversed*
*and causes remanded.*

BROWN and KLATT, JJ., concur.